## SUPREME COURT OF JUDICATURE

###### OF THE

## STATE OF NEW-YORK,

###### IN MAY TERM, 1832, IN THE FIFTY-SIXTH YEAR OF OUR INDEPENDENCE.

Continued from volume Eighth.

## DENISON *vs.* SEYMOUR.

The *master of a steam-boat,* employed in the transportation of passengers, like the master of a vessel engaged in the merchant service, is answerable for the diligence of all to whom is entrusted the management of the vessel; and it was accordingly *held,* that he was liable for any injury done by running a steam-boat navigated by him against and sinking another vessel, although the *pilot,* who received his appointment directly from the owners, was at the wheel steering the boat, and had the exclusive control and direction of her course, at the time of the accident.

THIS was an action on the *case,* tried at the Albany circuit in September, 1830, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The defendant was sued as the captain or *master* of the steam-boat, the *New Philadelphia,* for running upon and sinking a vessel called the *Atlantic,* belonging to the plaintiff, lying at anchor in the Hudson river. The collision took place in the night. There was a dense fog; but whether it extended to that part of the river where the Atlantic was lying at the time of the accident is doubtful, the evidence as to that fact being contradictory. It was proved that the fogs on the river

make their appearance suddenly, and are very dense at some points for the extent of perhaps half a mile, while at other points they are much lighter. At the time of the accident, the master was on board of the steam-boat, but not on deck; the *pilot* was at the wheel, steering the vessel, and did not observe the Atlantic until within about 30 rods of her, when it was impossible for him to avoid the collision, considering the speed of the boat. The *pilot*, as well as the *captain* or master, was employed by the owners of the steam-boat; when under way, the pilot has the exclusive control and direction of the course of the boat, but is bound to obey the orders of the captain as to stopping the vessel or proceeding on her course. The judge charged the jury that the defendant, as master of the steam-boat, was not responsible for injuries arising from the acts or negligence of the pilot, unless he at the time controlled the direction of the boat, or commanded the act which caused the injury, or permitted it when he had power to prevent it, or omitted some duty by means whereof the injury happened. If, however, the jury should be of opinion, from the evidence adduced, that the night was so dark and foggy as to render it unsafe and imprudent to run the boat, they ought to find for the plaintiff; for in such case it was the duty of the defendant to have directed the boat to be stopped. The jury found a verdict for the defendant. The plaintiff moved for a new trial.

*J. Hamilton*, for plaintiff.

*S. Dutcher, jun.* for defendant.

*By the Court*, SAVAGE, Ch. J. The motion for a new trial rests on the double ground that the judge erred in his instructions to the jury, and that the verdict is against the weight of evidence.

The question how far the *captain* of a *steam-boat* is responsible for the acts of the *pilot* in navigating the boat, is one of importance and difficulty. The officer here called the *pilot*, is not the same as the pilot recognized in the laws regulating foreign commerce. Vessels are required, by the laws of most

commercial countries, to take a pilot in what are called pilot's

water; and if the captain of such vessel omits to do so, he takes the consequences upon himself. When such a pilot is on board, he has the exclusive direction and control of the vessel, and is considered master *pro hac vice*. He is responsible, and of course supersedes the master for the time. *Jacobson's Sea Laws*, 125. The case of *Snell and others* v. *Rich*, 1 *Johns. R.* 395, was an action on the case against the master of the *Amphion*, for negligence in so navigating that vessel that she ran foul of the plaintiff's vessel, and carried away her bowsprit. It appeared in evidence that the defendant was not on board at the time of the accident. The Amphion had a branch pilot on board. The judge charged the jury, that under these circumstances the defendant was not liable; and the court sustained the charge of the judge, saying that the pilot must be considered master *pro hac vice;* that as the master was not on board, he certainly was not master at the time of the accident. In *Bussy* v. *Donaldson*, 4 *Dallas*, 206, it was held that the owner was liable for the negligence of the pilot, on the ground that he was the agent or servant of the owner, although he was not chosen by the owner, but placed in his service by the act of the legislature. In many of the cases referred to on the argument, the principal question seems to be, whether *trespass* or *case* is the proper action where damage ensues from one ship running foul of another. In *Ogle* v. *Barnes*, 8 *T. R.* 188, Lord Kenyon says, if the act occasion an immediate injury to another, trespass is the proper remedy; but if the injury be not immediate, but consequential upon the act done, then an action on the case should be brought. Grose and Lawrence, justices, say that the distinction is between acts done wilfully and negligently. The case of *Leame* v. *Bray*, 3 *East*, 593, came before the court about four years after *Ogle* v. *Barnes:* and in that case the true criterion was said to be, whether the injurious act be the immediate result of the force applied by the defendant; it is immaterial whether the act be wilful or not. And Lawrence, justice, says, that in *Ogle* v. *Barnes*, he did not mean to say that the distinction turned on the wilfulness of the act. In *Hugget* v. *Montgomery*, 5 *Bos. & Pul.* 446, the action was trespass against the

master of a vessel and also owner, for an injury done to the plaintiff's vessel. The jury found that the injury arose from the negligence of the pilot, and rendered a verdict for the plaintiff. The court set aside the verdict and ordered a nonsuit; they considered the pilot as the servant of the defendant, who in this instance was both master and owner; and the court do not distinguish in which capacity the pilot was his servant.

The question here is not so much whether *case* is the proper form of action, as whether the action lies against the present defendant—he not being the owner of the boat, and not being present or giving any direction when the injury was done. It is contended that he is a middle man; neither the owner for whom the boat was navigated, nor the person who committed or concurred in the act from which the injury arose. To establish this proposition, the case of *Stone* v. *Cartwright*, 6 *T. R.* 411, has been relied on. In that case the defendant was agent and manager of an infant's estate, appointed by the court of chancery. As such, he employed the workmen who worked a colliery belonging to the infant's estate. From the negligence of the workmen, the plaintiff had sustained an injury, but the court held the defendant was not liable. Lord Kenyon said that the action must be brought against the hand committing the injury, or against the owner for whom the act was done. This case, I apprehend, is not analogous in its circumstances, though the principles laid down may be applicable. The defendant in that case hired and dismissed the workmen at his pleasure, and employed a bailiff under him to superintend the work. He took no personal concern in the business, and was not present when the injury was done. The relation of master and servant did not exist between the defendant and those workmen who were employed by him; he was the mere agent of the owner. The work was not done for his benefit, and he had personally no concern in the profits of the labor; nor did he direct the particular act from which the injury proceeded; and again there was nothing in his situation analogous to that of master of a vessel. The principle may be of extensive application, that the action must be brought against the hand committing the in-

jury, or the owner for whom the act was done. It was remarked by Lawrence, justice, that had the defendant particularly ordered the acts to be done from which the injury proceeded, that would have varied the case. There the defendant employed the workmen. So also the captain of a vesssel usually employs the mariners and appoints his subordinate officers. The defendant in that case had nothing to do personally with the management of the colliery. Not so with the master of a vessel ; it is his particular business to superintend the navigation of his vessel and direct its course.

The circumstances of the appointment of the officers seems to have been considered important in the case of *Nicholson* v. *Mounsey & Symes*, 15 *East*, 383, which was an action against both defendant for negligence in the management of their vessel, by reason of which the defendants' vessel ran foul of and destroyed the plaintiff's ship. The defendant Mounsey was captain, and the defendant Symes first lieutenant, of a sloop of war. All the officers of the sloop were appointed by the commissioners of the admiralty, and not by the captain of the vessel. Symes was the commanding officer of the watch, and upon deck when the injury was done. Mounsey was not upon deck, nor required by his duty to be there at the time. It was not pretended that negligence was personally imputable to Mounsey, unless he was responsible as captain of the ship. On the part of the plaintiff it was argued that the captain of a ship of war was answerable in the same manner as the captain of a merchant ship, who is answerable for the misconduct of his crew in the management of the ship, by which any one sustains damage. On the part of the defendant Mounsey, it was contended that the principle upon which masters are liable for the acts of their servants was not applicable—that principle is, that the servants are appointed and employed by the masters, who should be careful to employ none but such as are persons of competent skill and due diligence. Lord Ellenborough, in giving the decision of the court, held that the captain of the sloop of war was not master in the ordinary acceptation of the term. He had no power of appointing the officers or crew on board, and he was no volunteer in that particular station, merely by having origin-

ally entered into the naval service. He had no power of appointment or dismissal over those under him. The captain and lieutenant were both appointed by the same authority, and both had their appropriate duties to perform ; both were servants of one common master, but there was no consent by the one to the act of the other. The case of *Webb* v. *Drake*, cited by *Abbott, arguendo* 15 *East*, 387, was referred to on the argument, in which the captain of a public vessel had been held responsible for the act of his lieutenant in running down another, though the captain was at the time asleep in his cabin ; but it appeared in that case that the captain had given the orders for the particular tack to be made in the course of which the vessel had been run down, although before the injury he had gone below. In that case, however, the jury found a verdict for the defendant, and the direction of the judge as to the liability of the captain never came before the court. This same case was referred to very briefly in *Bowcher* v. *Noidstrom*, 1 *Taunt*. 569, where it seemed to be taken for granted that the captain was liable, and in which case the court seemed to acknowledge the principle that the master was liable for the conduct of a pilot on board his vessel ; but as that was an action of trespass, and the captain had done no act, they directed a nonsuit.

The only case in this court which is at all analogous is the the case of *Foot & Reynolds* v. *Wiswall*, 14 *Johns. R.* 304. That was an action against the defendant, as captain of the steam-boat Paragon, for running foul of the plaintiffs' sloop. The cause was tried before the recorder of New-York in the common pleas of that city. The recorder charged the jury that the defendant was *prima facie* liable for the injury, and that it lay upon him to shew that it did not arise from negligence on the part of those who navigated the steam-boat. The question of negligence he submitted to the jury, saying that if the plaintiffs' vessel might with proper care have been avoided, then the plaintiffs were entitled to their verdict ; for the circumstance of there being no light on board the sloop in such case would be no excuse for the defendant : but if there was no want of care on the part of the defendant, then the charge of negligence would apply to the plaintiffs, there being no light on board of the sloop. The jury found a ver-

dict for the defendant. The plaintiffs brought a writ of error on the ground that the question of negligence was a question of law. The court said that the question of negligence was a mixed question, (the facts are to be found by the jury ; and whether those facts will in judgment of law warrant the charge of negligence, is matter of law,) but that the case had been fairly submitted to the jury and they affirmed the judgment. In that case it appeared that the captain was not the immediate agent, being below when the collision took place. It was said on the argument that the defendant was guilty of negligence in navigating his boat in a dark night, which was answered that the plaintiffs were equally guilty by navigating their sloop. It is to be remarked that no question was raised as to the liability of the captain, provided those persons who managed the steam-boat at the time were guilty of negligence ; neither was there any thing said about the manner of his appointment or that of his crew, whether the hands or pilots were employed by the owners or by the captain.

Were this an action against the master of a vessel engaged in the merchant service, it seems to be conceded by all the cases that he would be liable. In such cases, the master is responsible for the diligence of all to whom is entrusted the management of the vessel. On the other hand, were the action against the captain of a ship of war, the case of *Nicholson* v. *Mounsey* proves that the captain is not responsible for the negligence of the other officers. For this exemption two reasons seem to be assigned : one is, that the captain and his officers are all appointed by the same authority, and the captain cannot appoint or remove his inferior officers ; the other reason is, that the captain is not a volunteer in the station where he is found. He is obliged, from the office which he holds, to take command of any vessel to which he may be assigned, with such other officers and crews as he may find there, and make the best of them. A steam-boat for the transportation of passengers with their baggage, and for carrying small freight, is a merchant vessel ; and though the pilots are appointed by the owners, and not by the captain, yet the captain is a volunteer in that service, in the language of Lord Ellenborough. The steam-boat service is not like the naval

service of a nation.    No captain is bound to engage as such ; he has a choice whether he will serve such persons as the owners choose to put on board as officers.    He knows the responsibility of master of a vessel, and if he is unwilling to be responsible for the negligence of the subordinate officers, he is under no compulsion to serve there himself.    If he accepts the office of master of the vessel, he does so with the knowledge of the responsibility which as such he incurs.    If the owner of a merchant ship were to stipulate with the master that he should take certain persons for his mates, that, I apprehend, would not alter his responsibility to third persons, however it might affect his responsibility to the owner.

On the whole, I am of opinion that the fact of the pilot being chosen by the owners does not alter the law as to the captain's responsibility.  Suppose the owners should contract, not only with the pilots, but with all the hands on board, through the agency of some other person besides the captian, as they probably do, would the captain therefore become entirely irresponsible ? and must any one whose vessel has been run down, where a totally irresponsible person was at the wheel, bring his suit against a common sailor ?    The owners of a vessel may not be known ; they may be residents of a foreign country.    It would be adding insult to injury to say to a man, whose property had been destroyed, that he has his remedy against a common sailor, or the owners who perhaps live in Europe.    My opinion is, that the master of a steam-boat is liable like the master of a merchant ship ; and that the circumstance of the pilot's being appointed by the owners does not discharge that liability, so far as third persons are concerned.    Having come to this conclusion, it is unnecessary to inquire whether the verdict was against evidence.

New trial granted ; costs to abide the event.