# Watson *vs.* Bennett and White.

Corporations are bound by their simple contracts, and by other acts of their officers and agents, made and performed in the discharge of their ordinary duties.

And trover or trespass will, in a proper case, lie against a corporation aggregate, for the acts of its officers or agents, done in the performance of their ordinary duties, or by special directions of the corporation, speaking by its board of directors, or other managers.

The courts may, *it seems*, take notice of the general nature of the duties of a cashier in and about the banking office, and without evidence of usage or express authority, hold him authorized to do all incidental acts necessary to the performance of those general duties; but further they ought not to go. If power to execute an indemnity to a sheriff for selling goods on an execution, in behalf of the bank, is claimed to exist, it should be shown.

It should not be assumed by the court, as matter of law, that a direction by the cashier of a bank to a sheriff to sell property levied on, implied by giving him a written indemnity, was the act of the bank, and not the act of the cashier.

The giving of such a paper is evidence of an interference with the property levied on, and a direction to sell it, which should be submitted to the jury, on trespass being brought against the cashier.

*Watson v. Bennett.*

THIS was an action for taking and converting the plaintiff's personal property, and was tried at the Onondaga circuit, in February, 1851. The defendants denied that they took and converted the property *at the time and place mentioned in the complaint.* They also alledged that the property in the goods and chattels was in one Richard Lusk, and that the Salina Bank and Onondaga County Bank, of which the defendants were respectively cashiers, had each recovered a judgment against Lusk in this court, and that the defendants, being fully authorized, as cashiers, procured executions to be issued upon the judgments in favor of their respective banks, and that they delivered them to the sheriff, to be executed, and that by virtue of such executions, the sheriff levied upon and sold the property in question ; and they denied that they did any other act, or gave any other directions in the premises. Upon the trial, after proving the seizure and sale of the property, and that the sheriff before sale required indemnity, the plaintiff, to connect the defendants with the wrongful taking and conversion of the property, offered in evidence a paper in the form of a bond from the two banks and James L. Voorhees, to the sheriff of the county of Onondaga, in the penalty of two thousand dollars, reciting the issuing of the executions and the levy upon the goods, and that they were claimed by the plaintiff and others, and conditioned that the banks should indemnify and save harmless the sheriff and all persons aiding and assisting him, from all damages, &c. that might arise by reason of levying upon or selling the goods, &c. The paper was not sealed, and was signed, " M. W. Bennett, Cashier Bank of Salina, Haml. White, Cashier Onondaga County Bank, James L. Voorhees." The reading of the paper in evidence was objected to, because the defendants were agents of their respective banks in the execution by them of said writing of indemnity, and the writing of indemnity was the act of the corporations, and not of their cashiers, who had subscribed the same, so as to amount to a direction or interference on their part, rendering them liable as trespassers ; which objection was sustained by the court, and the evidence excluded, and the plaintiff was nonsuited.

*L. R. Morgan,* for the plaintiff.

*D. A. Johnson,* for the defendants.

*By the Court,* ALLEN, J.    If the decision of this court in *Baker* v. *Bailey,* decided at the late July term, is to be followed, then the defendants by the form of their answer have confessed the trespass complained of, by confining their denial to the time and place alledged in the complaint, which are immaterial, and the plaintiff was wrongfully nonsuited for that reason.    But as this point was not expressly raised upon the trial, we prefer not to rest the decision upon it.    It can not be claimed at this day that corporations can only speak and act by their common seal.    They are bound by their simple contracts, and by other acts of their officers and agents, made and performed in the discharge of their ordinary duties; and on a simple contract the form of the execution is not very essential, provided it appears that the corporation is the contracting party, and credit is given to it, and not to the agent or officer.    (*Angell & Ames on Corporations,* 283, 288.    *Story on Agency,* §§ 52, 55.   *Dunlap's Paley on Agency,* 155, *note a.*)    There is just as little doubt that trover or trespass will in a proper case lie against a corporation aggregate, for the acts of its officers or agents, done in the performance of their ordinary duties, or by special directions of the corporation speaking by its board of directors, or other managers.    (*Yarborough* v. *The Bank of England,* 16 *East,* 6.    *Beach* v. *The Fulton Bank,* 7 *Cowen,* 485.    *Foster* v. *The Essex Bank,* 17 *Mass. Rep.* 139.    *Rehoboth* v. *Rehoboth,* 23 *Pick.* 139.    *Dater* v. *The Troy Turnpike and Railroad Co.* 2 *Hill,* 629.)

It was assumed upon the trial that the agreement to indemnify was the act of the corporations, represented by these defendants, and not the individual acts of the defendants; and that the latter, in signing it and delivering it to the officer, and thereby authorizing the sale of the property in question, acted as the mere agents of the corporations, and within the scope of their ordinary duties, and by such act bound the banks named.

Watson *v.* Bennett.

Doubtless, if they acted as the *mere* instruments of their respective banks, and as such affixed the names of their respective corporations to the paper by order of the directors or other managers, they incurred no responsibility, any more than do the president and cashier of a bank by signing the bills of a bank become personally responsible for their redemption. A different question would arise if it should appear that they upon their own responsibility, without special direction from the directors, but acting within the general authority conferred upon them by general usage or by the by-laws of the corporations, had directed the sale of this particular property. In such case my impression is that they would be liable to this action, and could not shield themselves under their agency. In torts, all actors are liable for acts done by them, or by their special directions. All persons who direct or assist in committing a trespass are in general liable as principals, though not benefited by the act; and an agent or servant is equally liable as his principal, whether the tortious act be done by the authority of his master or not. (2 *Saund.* 47, *i.* 12 *Mod.* 448. 1 *Chit. Pl.* 80.) Where several are concerned, all may be sued jointly. (1 *Chit. Pl.* 80.) A client and attorney may be jointly sued for acts done by an agent employed by the attorney and acting under him and by his direction, and in his absence. (*Bates* v. *Pilling*, 6 *Barn. & Cress.* 38.) The doctrine that a middle man is not responsible for acts done by a subordinate agent employed by him in behalf of his principal, has no application when the agent or middle man directs the specific acts of the subordinate employee. (*Stone* v. *Cartwright*, 6 *Term Rep.* 411. *Denison* v. *Seymour*, 9 *Wend. Rep.* 9, 12, 13. *Dunlap's Paley on Agency*, 402.) There is, however, a difficulty in this case before reaching this point. Without any proof, it was held by the court that the defendants, as cashiers of the banks, had authority in virtue of their office, to execute the writing in behalf of the banks, and to bind them by such act. In the answer the defendants aver that as cashiers, duly authorized, they caused the executions to be issued and delivered to the proper officers; and the authority, to this extent, is admitted by the answer of the

plaintiff, in his reply to controvert the allegation. But authority beyond this is not admitted. A cashier, probably, has a general authority to superintend the collection of notes under protest, and to do any thing an attorney may do. (*Angell & Ames on Corp.* 297.) But he can not, I apprehend, change the relation of the bank to the debtor, or incur extraordinary liabilities in behalf of the bank, under pretense of attempting to collect its debts. An attorney could not, by a direction to a sheriff to levy upon property of third persons, bind his client to respond to the sheriff by way of indemnity, or to the injured party, in an action of trespass. A cashier having the same powers, and no other or greater, unless specially conferred, his principal is not responsible for his tortious acts. The court may probably take notice of the general nature of the duties of a cashier in and about the banking office, and without evidence of usage or express authority, hold him authorized to do all incidental acts necessary to the performance of these general duties; but farther, they ought not to go. If power to execute a paper like this in behalf of a bank is claimed to exist, it should be shown. (*Benedict* v. *Lansing,* 5 *Denio,* 283.) *Gillett* v. *Campbell,* (1 *Denio,* 520,) was decided upon the authority given by statute to the officers of banking associations, and not upon the ground that the authority to execute the contract in that case had been conferred by the corporation. Without evidence, I think it should not have been assumed by the court, as matter of law, that the direction to sell the property implied by giving the writing of indemnity, was the act of the corporations, and not the act of the defendants. The giving of this paper was evidence of an interference with the property, and a direction to sell it, which should have been submitted to the jury. (2 *Saund. Pl. and Ev.* 863, 864. *Coats* v *Darby,* 1 *Comst.* 517.)

The judgment must be reversed, and a new trial granted; costs to abide the event.

[ONONDAGA GENERAL TERM, November 3, 1851. *Pratt, Gridley, Allen* and *Hubbard,* Justices.]