## ADRIANCE and others *vs.* ROOME and others.

Officers of a corporation are *special* and not *general* agents; consequently they have no power to bind the corporation, except within the limits prescribed by the charter and by-laws.

B. was the superintendent of a manufacturing corporation, but there was no evidence that he was its general agent, his actual authority being " to have charge of the manufacturing department of the works, audit bills for materials and labor, and to appoint and discharge foremen and workmen," and there was no proof that the corporation ever conferred upon him, or knew that he exercised any other authority; but on the contrary there was evidence that he was forbidden, generally, to sell iron belonging to the company; *Held,* that he had no authority to make a loan of money in the name of the company and execute a contract in its name, agreeing to sell and deliver to the lender a specified quantity of iron, in consideration thereof.

Persons dealing with the officers of a corporation are charged with notice of the authority conferred upon them, and of the limitations and restrictions upon it contained in the charter and by-laws.

There is no grant of power in the name by which the officer is designated; especially when the authority given is specified in the by-laws.

Adriance *v.* Roome.

APPEAL by the plaintiffs from a judgment entered at the circuit, on a trial before the court, without a jury. The action was brought to recover $1375 and interest, of the defendants, the owners and the trustees of a manufacturing corporation, known as the "Fishkill Iron Works." It was admitted that the defendants became personally responsible, according to the general manufacturing law, for the debts of this company, by not publishing the annual report required by the twelfth section of that law. The question litigated was, whether the debt of the plaintiffs was a debt of the company. The plaintiffs alleged in their complaint, that on or about the 11th day of August, 1864, a certain corporation was organized under the act of the legislature of the state of New York, entitled "An act to authorize the formation of corporations for manufacturing, mining and other purposes," passed February 17, 1848, and the several acts amendatory thereof, which corporation was known as "The Fishkill Iron Works," and was formed in order to carry on the business of manufacturing pig iron, and that the said corporation conducted and carried on said business at the town of East Fishkill, in said county, which was their location and principal place of business. That on or about the 2d day of February, 1865, the said corporation duly sold to the plaintiffs twenty-five tons of pig iron, and agreed to deliver the same during the month of April then ensuing, for which the plaintiffs paid to said corporation the sum of $1375, by their note payable to the order of said corporation or their agent, six months after its date; which note was discounted by a bank for the benefit of said corporation, and the proceeds thereof received by them, and was afterwards paid to said bank by the plaintiffs. That said iron, so purchased and paid for, was never delivered to the plaintiffs, nor was said money repaid, whereby said plaintiffs sustained loss and damage to the said amount of thirteen hundred and seventy-five dollars, with

Adriance *v.* Roome.

interest from August 5, 1865, besides $1.23 fees of protest on said note. That afterwards the plaintiffs commenced an action in this court against said corporation, to recover said damages, and such proceedings were thereupon had that on the 21st day of May, 1866, said plaintiffs recovered judgment against said company, for $1445.46 damages, and $18.30 costs, on which judgment an execution was issued to the sheriff of Dutchess county, commanding him to levy and collect the amount thereof of said company's property, and said execution was by him returned unsatisfied, for the want of goods and chattels to make the same, and said judgment remains wholly unsatisfied and unpaid. That the defendants in this action were the trustees of the said corporation named in the certificate and articles of incorporation thereof, and continued to be such trustees during the years 1864, 1865 and 1866. That the said company did not, nor did the president or trustees thereof, within twenty days after the 1st day of January, 1865, or within twenty days after the 1st day of January, 1866, or at any time during the years 1865 or 1866, make a report stating the amount of the capital, the amount paid in, and the amount of debts of said company, and verify the same, and cause the same to be filed in the office of the clerk of the county of Dutchess, where the business of said company was carrird on, or publish the same in a public newspaper, as is and was required by the twelfth section of the act of February 17, 1848, above referred to, but wholly omitted and neglected to file said report, or to publish the same, or to comply with the provisions of said statute in that respect. And the plaintiffs averred that by reason of the premises, the defendants became and were jointly and severally liable to pay to them, the said amount of $1462.75, with interest from May 21, 1865, for which amount they prayed judgment, with costs.

The defendants Roome and Banker answered separately. Roome alleged in his answer that the defendant William Bushnell was one of the trustees of the Fishkill Iron Works; that he was appointed by the board of trustees of said corporation superintendent of the same for the manufacture of iron only, but had no power or authority to enter into or make, in behalf of said corporation, any contracts whatever, saving such as were necessary for the manufacture of iron; that he had no authority or power to sell iron or other property bolonging to said corporation; that the alleged sale of twenty-five tons of pig iron, in the complaint set forth, was not made by said corporation, but if at all, by said Bushnell for his individual account and risk; that neither the defendants nor said corporation knew of such sale or attempted sale; that said corporation never received any money on account of same, and never made any note therefor. That said alleged sale was a false and fraudulent contrivance between the plaintiffs and Bushnell, purposely and fraudulently concealed from said corporation and the defendants, and was without consideration and void; that the action mentioned in the complaint, and the judgment alleged to have been recovered therein, were secretly and fraudulently contrived by and between the plaintiffs and the said Bushnell, without the knowledge of said corporation or of the defendants, and with intent and design to injure said defendants.

The defendant Banker, by his answer, denied each and every allegation in the complaint contained; and alleged that said William Bushnell had no authority to make the contract alleged and set up in the complaint, and alleged that said Bushnell, in his own behalf, made a contract for the sale of iron, otherwise similar in all respects to that set up in the complaint, and that at about the same time the said iron was to be delivered to the plaintiffs by him, the said Bushnell, he, at the instance and request of the plaintiffs, and without authority from the Fishkill Iron

Works, and without any new, or further, or any considera-
tion, changed the same so as to make it in form the con-
tract of the said Fishkill Iron Works, and that such
contract, so changed and made, is the same alleged and
supposed contract set up in said complaint.

On the trial, the note and contract were offered in evi-
dence, and are as follows :

" $1375. Poughkeepsie, August 4, 1865.

Thirty days after date we promise to pay to the order
of Wm. Bushnell, superintendent, thirteen hundred and
seventy-five dollars, value received, at the Merchants'
National Bank. ADRIANCE, PLATT & Co."

Indorsed " Wm. Bushnell, superintendent."

" This is to certify that the Fishkill Iron Works have
this day sold and agreed to deliver to J. P. Adriance, at
his works in Poughkeesie, during the month of April
next, twenty-five tons of best number one Fishkill pig
iron, at the price per ton of fifty-five dollars, for which he
has this day given me his note in full payment, the said
note being payable in six months from the date hereof.

WILLIAM BUSHNELL, Superintendent.
Poughkeepsie, February 2, 1865."

The justice, before whom the action was tried, found
as facts that on the 11th of August, 1864, the Fishkill
Iron Works became an incorporated company under the
general laws of the state, for the purchasing iron mines,
and for mining and selling iron ores, and for the manufac-
ture and sale of pig iron; that the principal business of
the company was located at East Fishkill, Dutchess county;
that the defendants were named as trustees for the first
year in the certificate of incorporation, who all accepted
such office; that William Bushnell, one of the trustees,
was made superintendent of the works of the company;
that by-laws were adopted by said company on the 15th

of September, 1864, defining his powers in these words; "The superintendent shall have charge of the manufacturing department of the works, audit bills for material and labor, to be presented to the secretary for payment, and to make weekly returns of the number of employees and the product of the works to the president and secretary; he shall have the appointment of all foremen and workmen, and may discharge them at his pleasure." The by-laws further provided that the secretary shall draw on the treasurer for all moneys required for the company, which were to be countersigned in all cases by the president, and all contracts, purchases and sales not immediately connected with the operations of the works, shall have the approval of the board of the trustees. The company never manufactured any iron, and never had any for sale; that on the 2d of February, 1865, the defendant Bushnell, as superintendent, and in the name of the company, sold and agreed to deliver during the month of April following, twenty-five tons of best number one Fishkill pig iron, at $55 per ton, to the plaintiffs, and received in payment therefor the note of the plaintiffs for $1375, payable six months after date, which note was discounted by Bushnell, and he received the money thereupon; that Bushnell requested the contract to be made, and said it was to raise money to buy wood and stock to run iron—the other defendants had no knowledge the contract of by Bushnell or any other person, until after the plaintiffs sued the company upon the contract, in the early part of 1866; that the summons and complaint in that action was served upon Bushnell, and he did not communicate the fact of such service being made upon him, or the pendency of such suit, to any of the other defendants; he put in no appearance himself for the company, nor was any appearance put in by any body for the company; that on the 21st of May, 1866, the plaintiffs recovered a judgment by default against the company for $1462.76 damages and costs, upon

Adriance *v.* Roome.

said contract, judgment docketed in Dutchess county 21st of May, 1866, and execution issued thereon soon after to the sheriff of Dutchess county, and returned unsatisfied; that the defendants, as trustees of the company, did not make, publish and file the report required by law, as averred in the complaint: That Bushnell expended or retained the money he received from the proceeds of the plaintiffs' note, and did not communicate the receipt of the money, or the time when, or the person to whom he disbursed it, either to the trustees, or to any individual of them, until after this action was commenced. And that he did not expend the money in payment of the debts, or upon the business, or in any way for the use or benefit of the company.

The judge found as conclusions of law, first, that the superintendent, William Bushnell, had no authority, either under the by-laws, in fact, nor was he authorized, as to third persons, by any power given him from his designation as superintendent, to make the contract or loan in question; and second, that the money received therefrom was not received by, or used for the business of the company; and third, that the defendants were entitled to judgment, with costs.

*James Emott*, for the appellants. I. The only evidence as to the use or application of this money is the evidence of Bushnell. He testified positively that he expended this money for the benefit of the company in paying debts incurred for coal, ore and labor, &c. just as he did the other money in his hands. He is not contradicted on this point. The defendants are trustees of the company; are in possession of its books and vouchers, and produced nothing to contradict Bushnell.

II. The judge, in a short opinion, giving the reasons why he refused to believe the testimony of Bushnell, says, that Bushnell knew the company could not know its

Adriance *v.* Roome.

standing unless it had the facts as to its contracts, debts,
&c. on its books; that notwithstanding this, he kept no
account of payments or debts; that he did not commu-
nicate the fact of the receipt of the money or its expend-
iture to the company or its officers; and that he said he
did not think he paid his own debts with it. As to this,
we observe, that the expression, he did not think he paid
his own debts with the money, was brought in by insert-
ing a part of a question with the witness' answer. He
swore positively that he used this money for the benefit
of the company and not for his own. As to his keeping
no memorandum, all that he said was, that he had then
and there no memorandum, and that he kept no specific
account of the use of this particular money. All the
money which was used, was used by Bushnell, and no one
of the directors knew any more of the application of
other moneys than they did of this. Bushnell was fur-
nished with money and allowed to expend it as he chose.
The enterprise failed, and none of them seem ever to have
looked after it at all. The defendants, who could have
done so, did not attempt to show what money Bushnell
had, or how he expended it; or that his expenditures did
not include this money. Each of the other defendants
knew as well as he that no account of the company's
standing could be given without proper accounts, yet none
were kept; and if any presumption is to be drawn from
this, we submit it ought not to be against the sworn state-
ment of the only witness who knows the facts, and against
a creditor in good faith who trusted the only ostensible
manager of the company.

III. We submit, therefore, that the finding of the judge,
that the Fishkill Iron Works did not have the benefit of
the money advanced by us to their agent, was contrary to
the evidence

IV. Whether this money was used by Bushnell for the
benefit of this company, or misappropriated, the company

Adriance *v.* Roome.

were liable for it. The money was advanced by the plaintiffs in good faith to the superintendent of the company, who was also one of its trustees. He was the only agent or officer of the company who had any thing to do with its operations. He bought all the material employed, and paid for all the labor. He was, in fact, and in legal effect, the *general agent* of the corporation.

V. As the general agent of the corporation, its "superintendent," and its only known or recognized manager, he had power to sell iron, made or to be made by the company, or to borrow money for the use of the corporation. These were part of the general powers and duties of such an office unless the officer was restrained or deprived of them by the charter or by-laws. (*Munn* v. *Commission Co.*, 15 *John.* 44. *Fay* v. *Noble,* 12 *Cush.* 18. *Wild* v. *Bank of Passamaquoddy,* 3 *Masson,* 505.)

VI. There are no restrictions in the statutes or the charter, upon these general and apparent powers of the manager of such a company. The alleged restriction is asserted from the by-laws. The only provisions bearing upon this subject are contained in the eighth and tenth by-laws.

VII. The purport of these provisions is, 1. That no express authority is given to the general agent or superintendent to sell the product of the works, or to borrow money for the purpose of the manufacture. 2. That "all contracts, purchases or sales not immediately connected with the operation of the works, shall have the approval of a majority of the trustees."

VIII. From the whole by-laws it appears that while no express authority is given to the superintendent either to borrow money for the purpose of the manufacture, or to sell iron; neither is such authority given to any other person or officer; nor yet is it expressly withheld

IX. The enumeration in the by-laws of a company of certain powers of its officers, and the omission to confer other powers upon them, is not a limitation of the ordinary

Adriance *v.* Roome.

powers of such officers of corporations, as to third persons dealing with them. (*Fay* v. *Noble*, 12 *Cush.* 18.)

X. Third persons dealing in good faith, as the plaintiffs admittedly were, had a right to assume that an officer representing a corporation, as Bushnell did, possessed the powers implied by his name of office, and by the apparent exclusive conduct of the concerns of the company committed to him. Persons so dealing with such an agent are not bound by limitations of the power of such an agent contained in the by-laws of the corporation. (*Royal British Bank* v. *Turquand*, 5 *Ell. & Bl.* 248. *Smith* v. *Hull Glass Co.*, 8 *Com. B. Rep.* 667. *Fay* v. *Noble*, 12 *Cush.* 18. *Ang. & Ames on Corp. p.* 303, *last ed.*)

XI. The restriction in the by-laws, requiring the assent of the directors to contracts and sales, is wholly ineffectual to protect the company from liability for this contract of their agent. This contract was *infra vires* of the company and of its agents, and third persons were not concerned with the question whether, in making it, the company or its officers had observed the regulations and limitations of their by-laws. (*Lindl. on Part. vol.* 1, *p.* 268, *new ed. Ager* v. *Ath. Life Assur. Soc.*, 3 *C. B. N. S.* 735. *Prince of Wales Assur. Soc.* v. *Athen. Ins. Soc.*, *Id.* 756, *n. Prince of Wales Assur. Soc.* v. *Harding*, 1 *Ell. Bl. & Ell.* 183. *Fay* v. *Noble*, 12 *Cush.* 18. *Bates* v. *Keith Iron Co.*, 7 *Metc.* 224. *Medbury* v. *Erie R. R. Co.*, 26 *Barb.* 564. *N. H. R. R. Case*, 34 *N. Y. Rep.* 30–68.)

XII. This money was borrowed for the repairing the furnace of the company, and purchase of material to be used for the manufacture. It was, therefore, "immediately connected with the operation of the works," and is not within the tenth by-law.

*John Thompson*, for the respondents. I. The defendants were not partners, nor members of a joint stock company, but were strictly a corporation under the statute; the

object of which was to protect the stockholders and trustees from any other liability than that which they incurred through their agents lawfully authorized; this authority was given in the by-laws, which was notice to all persons dealing with either of such agents. Hence a prudent man would look at this special authority, and deal with full knowledge of its nature and extent; he had knowledge or the means of knowledge, and took the risk. (*Hawtayne* v. *Bourne,* 7 *Mees. & W.* 594. *McCullough* v. *Morse,* 5 *Denio,* 567. *See opinion of Lott, senator; Dunlap's Paley on Agency,* 192.) The superintendent being an officer with special and defined powers, *no general power* to make sales, incur debts, or give notes, *can be implied.* Could the superintendent of a cotton factory make a valid sale of all the manufactured goods in virtue of superintending their manufacture? or the teller of a bank bind it by notes or contracts? No corporation could exist a moment if every officer could, at his own option, assume to transact the functions of every other. (*Mechanics' Bank* v. *N. Y. and New Haven R. R. Co.,* 13 *N. Y. Rep.* 632, *Comstock's opinion.*)

II. The defendants are not liable to the plaintiffs on any theory of expending the money for their benefit. 1. The judge has found, on all the facts, that the money was not so expended; the witnesses swore to it generally; but he could give no single item, day, date, or amount of such outlay, or to whom paid; there was no account of any such expenditure rendered to the company; no member of it knew of the fact but himself, if true; and the secrecy of the judgment got for the amount, all go to show the story incredible. It was proved " that Bushnell sometimes hired and paid men," but the same witness also stated that he " knew of no loan of money, except money furnished by the president or secretary in the usual way." The fact was, as shown, that Bushnell & Banker incurred debts in fixing up this furnace before it was turned over to the company, and the moneys received on

Adriance *v.* Roome.

this note and contract went to liquidate those debts, and not those of the company. 2. If it was true that the money was expended for the company, that gives the plaintiffs no right of action. Bushnell has not assigned any claim for money expended, and besides, the company may have claims against Bushnell to a larger amount. The plaintiffs must recover, if at all, on the power of Bushnell to sell iron and borrow notes for the company, and not because Bushnell expended money for them.

III. In an action like this, the judgment is not conclusive; the consideration of the debt may be inquired into, and may be shown to be invalid, notwithstanding the judgment. Nor does the omission to file the report specified in the 12th section of the act of 1848, make the trustees liable for any debt not otherwise a legitimate debt of the company. (*Belmont* v. *Coleman*, 21 *N. Y. Rep.* 96. *Moss* v. *McCullough*, 5 *Hill*, 137.)

*By the Court*, GILBERT, J. It is not contended that Bushnell had any express authority to contract the debt in question. It is urged, however, that he was the *general agent* of the corporation. No doubt a corporation may be bound by the acts of a general agent, in the same manner as private individuals; and persons dealing in good faith with such an agent are not presumed to know the private instructions which may have been given to him by his principal. But we think this principle will not aid the plaintiffs in this case. There is no evidence that Bushnell was such an agent. His actual authority was "to have charge of the manufacturing department of the works, audit bills for material and labor, and to appoint and discharge foremen and workmen." There is no evidence that the corcorporation ever conferred upon him, or knew that he exercised, any other authority. On the contrary, the evidence is that he was forbidden generally to sell iron, which was the act out of which the alleged liability in this case arose. It is

411

said, however, that the plaintiffs had a right to assume that Bushnell, being superintendent, possessed the powers implied by his name of office, and were not bound by the restrictions contained in the by-laws. We think the rule of law is otherwise. Officers of a corporation are *special* and not *general agents;* consequently they have no power to bind the corporation except within the limits prescribed by the charter and by-laws. The English cases cited by the plaintiffs' counsel do not conflict with this principle. They are all cases of joint stock companies, and they merely hold that where a personal obligation under the seal of the company had been made by officers authorized to do the act, under a resolution of the company, the company were *prima facie* bound, and that no one looking at the deed of settlement and the obligation could come to a different conclusion. The only question was whether the holders were bound to look further and ascertain whether the issuing of the obligation had been authorized by resolution. It was held that they were not.

The principle, however, that persons dealing with the officers of a corporation are charged with notice of the authority conferred upon them, and of the limitations and restrictions upon it contained in the charter and by-laws, is too well established to require to be supported by a citation of authorities, and we cannot assent to the proposition that there is any grant of power in the name by which the officer is designated; especially when the authority given is specified in the by-laws.

We are of opinion, therefore, that the court below correctly decided that Bushnell had no authority to contract the debt in question.

The only remaining question is whether the corporation has ratified the transaction. The evidence is that the other officers and directors had no knowledge of it whatever. The court below found that the corporation had no benefit from it, and we think the evidence is sufficient

to bear out the finding. But if otherwise, it would be ineffectual to prove a ratification without the further proof showing the knowledge and acquiescence of the corporation. The case yields no such proof.

The judgment therefore must be affirmed, with costs.

[ORANGE GENERAL TERM, September 14, 1868. *Lott, J. F. Barnard, Gilbert* and *Tappen*, Justices.]