NEW YORK PRACTICE REPORTS. 267

Chemical National Bank of New York agt. Kohner.

# N. Y. COMMON PLEAS.

The Chemical National Bank of New York, plaintiff and appellant, agt. Jette Kohner, administratrix, &c., of Joseph Kohner, deceased, defendant and respondent.

*Cashier of a bank — his powers and duties — No legal authority to compromise a claim of the bank.*

A cashier of a bank has no legal authority, by virtue of his position as such cashier, to compromise a claim of the bank, or to execute a composition agreement and release therefor.

Such a power is discretionary, calling oftentimes for the exercise of considerable reflection and a high degree of judgment. It is strictly a sacrifice at least of nominal property of the bank, and is a function of the board of directors and not of an executive officer.

*General Term, January*, 1880.

*Charles Jones* and *John E. Roosevelt*, for appellant.

*B. F. Watson*, for respondent.

Larremore, *J.* — In November, 1872, the firm of Griffith & Prentiss made and executed to their own order their four several promissory notes, amounting in the aggregate to $15,330.20, which said notes were indorsed by said Griffith & Prentiss and Joseph Kohner, the defendant's intestate. When said notes became due the said firm were unable to pay the same in full. At this time said firm were indebted to the Bank of New York and the Central Bank of New York upon notes upon which, also, said Joseph Kohner was indorser. For the purpose of making a composition of their debts with the banks above mentioned Charles Griffith, a member of said firm, in November, 1873, applied to the Bank of New York, through its officers, to compromise the indebt-

edness of Joseph Kohner to that bank by accepting twenty-five cents on the dollar in satisfactory notes, and was told by the officers to whom such application was made that they would do whatever the Chemical Bank did. A similar application was made to the president of the Central Bank, who replied that "they would have nothing to do with any paper or any note; that any settlement 'he made would be money; that he would have nothing to do with Mr. Kohner in any form excepting money." Mr. Griffith called at the Chemical Bank and made a similar application. Mr. Williams, the cashier, wrote and delivered to Mr. Griffith the following letter:

"CHEMICAL NATIONAL BANK,
"NEW YORK, *November* 14, 1873.

"C. P. LEVERICH, Esq.:

"DEAR SIR. — At the request of Mr. Griffith, I beg leave to say that we propose to take the notes of Jos. Kohner, indorsed by J. A. Goldsmith, for twenty-five cents on the dollar of his indebtedness to us, and discharge him in full when the notes are paid, holding, of course, Griffith for the balance.

"Very respectfully.

"G. G. WILLIAMS,
"*Cashier.*"

This letter was delivered by Griffith to the president or cashier of the Bank of New York, and left there. Evidence was offered on behalf of the plaintiff that Mr. Williams, on the afternoon of November 14, 1873, the same day on which the letter was written, reported this fact to the president of the Chemical Bank, who disapproved thereof, and it was decided not to make the proposed settlement with Kohner, and to notify the Bank of New York of such conclusion; and further, that the next day such notice was given to the Bank of New York before it had acted upon the letter. The referee refused to find the matters of fact above

stated, as claimed by the plaintiff to have been proven, to which refusal an exception was taken. On December 20, 1873, the claim of the Central Bank against Kohner, and the claim of the Bank of New York against him, were settled on the basis of the agreements respectively made by said banks with Mr. Griffith. On the day last named, a tender was made to the Chemical Bank, through its cashier, of the notes, payable in six months, which notes, it is claimed, were those intended by the letter of November 14, 1873, which the bank refused to accept. On the same day a certified check for an amount equal to that of the notes was tendered to the Chemical Bank, which it also refused to accept. Both the notes and the check thus tendered were subsequently destroyed, no further offer to pay the notes was made, and it has not since been paid.

In April, 1874, this action was commenced upon the four promissory notes hereinbefore mentioned. The complaint sets forth the making and delivery of said notes, their non-payment and protest at maturity, and demands judgment against the defendant for their aggregate sum of $15,330.20, with interest, protest fees and the costs of the action.

The defendant, in his answer, admits, by not denying, the facts alleged in said complaint, and sets forth, as a defense, the letter of November 14, 1873, by way of accord and satisfaction, in full release of plaintiff's claim. That in accordance with the agreement therein contained, and relying thereupon, the defendant's intestate had settled with his said other creditors on the basis thereof; that he had tendered a settlement to the plaintiff, upon the same terms and in the manner agreed upon, which plaintiff refused to accept, and that defendant has ever since been, and still is, ready and willing, and hereby offers, to pay said proportion of said notes, and therefore prays judgment in his favor.

The action was referred by consent. The referee found judgment for defendant, from which this appeal is taken.

I have examined, with great interest and satisfaction, the

opinion of the learned referee who tried this action, and, while assenting to most of the legal propositions therein advanced, feel constrained to differ from his conclusion of law upon the question of *estoppel in pais.* It is proper, therefore, that this subject be first considered, for, in my judgment, it is the pivotal point upon which the whole case turns.

What authority had the cashier of the Chemical Bank to write the letter of November 14, 1873, and what liability did said bank incur by reason of said letter?

To accurately define and limit the powers and duties of a cashier of a bank within the compass of an ordinary opinion from the bench, would be unsatisfactory and profitless. Groping through usages that are at variance with each other in different states and institutions, a brief reference to general principles of elementary law will suffice for our present purpose.

It appears to be conceded by all writers on this important subject of banks and banking, that a cashier is the business officer of a bank; but only in the sense of one who transacts, and not of one who regulates or controls its affairs. His duty has reference to daily routine business, and not to matters involving discretionary authority, which belongs, unless delegated, to the board of directors. As has been quaintly said, "they are the mind and he is the hands of the corporation." Another writer likens the directors to the judges, and the cashier to the clerk of a court. The former adjudicate and direct, the latter executes their mandate (*United States* agt. *Dunn,* 6 *Peters,* 51; *United States* agt. *City Bank of Columbus,* 21 *How.* [*U. S.*], *pp.* 356, 364; *Holmes' C. C.,* 209; *Dabney* agt. *Stevens,* 10 *Abb. Pr. Rep.* [*N. S.*], 39; *Adriance* agt. *Roome,* 52 *Barb.,* 399).

Such an officer, publicly acknowledged as such, is invested with such power as judicial sanction or banking usages have recognized and acknowledged as belonging to the office he holds, and it is for the court to decide whether or not any particular duty is within his authority. The bank would not

be responsible for acts of his which are discretionary, semi-official and solely within the prerogative of the directors, though done in good faith, under color of authority, and affecting an innocent dealer (*Morse on Banks and Banking*, *pp.* 156, 157 ; *Morse* agt. *Massachusetts Nat. Bank*, 1 *Holmes C. C. Rep.*, 209).

An enumeration of the general powers and duties of a cashier, as derived from text-books and judicial decisions, may be stated as follows : Collection and payment of debts. Power of borrowing money in ordinary course of the daily business of the bank. Power to draw checks upon its money in other institutions. Power to indorse its negotiable paper. Power to conduct its correspondence. Power to transfer its shares of stock.

It will not be disputed that where a special authority is conferred upon him, or where he acts in conformity with a general usage, or an established acquiescence of his board of directors, the bank will be responsible for such acts, though beyond the ordinary scope of his duties (*Elwell* agt. *Dodge*, 33 *Barb.*, 336 ; *City Bank of New Haven* agt. *Perkins*, 4 *Bosw.*, 420).

But where is the proof, in this case, of authority to compromise a debt, either by resolution, parol or usage ? Such a power it is said " is discretionary, calling oftentimes for the exercise of considerable reflection and a high degree of judgment. It is strictly a sacrifice at least of nominal property of the bank, and is a function of the board of directors and not of an executive officer."

All the cases agree in this, but hold that such authority may be delegated.

The decision in *Bank of Pennsylvania* agt. *Reed* (1 *Watts & S.*, *p.* 101), while intimating that such an authority might be exercised in a particular case, and under pressure of circumstances and necessity, must, in order to be in consonance with the general principles of law already cited, be construed to refer to a stringent and not an ordinary necessity,

and the act performed must be one that might be authorized by a usage or a directorial vote (*Watson* agt. *Bennett*, 12 *Barb.*, 196; *Barrick* agt. *Austin*, 21 *Barb.*, 241; *Adriance* agt. *Roome*, 52 *Barb.*, 399).

From what source, then, did the cashier of the Chemical Bank derive his authority to release an obligation held by it in favor of the defendant? Certainly not under William's right to conduct the correspondence of the bank for, under such power, he could only communicate its action. We have seen that the right claimed was not within his general powers as cashier, and there is no proof that authority in this respect was ever delegated to him, or of any existing usage on the subject.

If this view be correct it follows that the complaint herein should not have been dismissed.

I think it would be error to hold plaintiff estopped by the letter of November 14, 1873, even conceding, for the sake of argument, that Williams was the plaintiff's duly authorized agent in writing it. At the most it was but a private communication addressed to C. P. Leverich, Esq., in his individual capacity, informing him of what the plaintiff proposed to do in the premises. It was not a composition agreement in which the creditors were named and containing mutual covenants, and in the execution of which the creditors, or some of them, joined as in *Renard* agt. *Fuller* (4 *Bosw.*, 107) and *Hall* agt. *Merrill* (15 *Bosw.*, 266), but a letter containing a proposition that might have been revoked before it was acted upon. This the plaintiff sought to do, but the testimony offered upon this point was excluded and an exception taken. Mr. Griffith, one of the defendant's witnesses, was allowed to testify, under plaintiff's exception, to a conversation between himself and the president or cashier of the Bank of New York. The testimony rejected had reference to the subject-matter of this action and should not have been excluded, and the exceptions were well taken.

Another feature of this case should not be overlooked. The defendant in the answer avers and admits that the alleged

composition agreement is still in force, and that he has been and still is ready and willing, and therein offers to pay the twenty-five cents per dollar of plaintiff's claim in pursuance of such agreement. If this be a fact, and the referee has so found, I am unable to perceive why the plaintiff should not have had a judgment for the amount due upon the agreement. If it ever had a legal existence, the plaintiff could not rescind it and the defendant has affirmed it.

But it is unnecessary to review the numerous exceptions raised. I place my judgment on the broad ground of want of legal authority in plaintiff's cashier to compromise the claim in question or execute a composition agreement and release therefor. For this reason I am of opinion that the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

DALY, Ch. J., and VAN BRUNT, J., concurred.