Brady, J.
This action was brought to recover from the receiver of the Wall Street Bank a sum claimed to be due for services rendered by the plaintiffs as counselors-at-law, and upon a retainer of the Wall Street Bank before its dissolution. The questions involved are, first, whether the plaintiffs were retained by the Wall Street Bank in such manner as to make that corporation liable, and if yea, what was the value of the services rendered.
It appears from the record that the plaintiffs, prior to August 13, 1883, were the attorneys of Cecil Ward & Co., and as such had commenced a suit against one Ducker. On that day the firm just named failed, heavily indebted to the bank, but having large claims against one Stedman, one Saunders, and others, the failure of the firm being caused by Stedman. On the next day, namely, August 14, 1883, the plaintiff Root went to the Wall Street Bank and saw the cashier, John B. Dickenson, with whom he had a conversation about the assets of Cecil Ward & Co., and the result seems to have been that Mr. Dickenson, who appears to have had entire charge of the relations of the bank with the broken firm, effected an arrangement by which Cecil & Ward turned over to the bank all their assets, including the claims against Ducker and the Stedmans, when, according to the testimony on behalf of the plaintiffs, the latter were by Mr. Dickenson directed to collect or prosecute the claims for the bank, for which service the bank would pay them. The plaintiffs, upon this retainer, rendered services and made disbursements, acting in many matters under the direction of Messrs. Shearman & Sterling, the general counsel of the bank, who, it seems, were to some extent, authorized to control movements of the plaintiffs, and who ultimately took upon themselves the management of these claims as of the other affairs of the bank. It is not understood that there is any dispute as to the retainer in the-manner stated, the contention being that the cashier had no authority to bind the bank unsupported by the concurrence of the directors, either by resolution or knowledge of and acquiescence in the acts of the plaintiffs in behalf of the hank.
As will have been observed from the statement of_ facts just made, the cashier retained the plaintiffs without authority by any resolution of the board of directors and without the knowledge of any of the officers of the bank. Was it within the scope of the general authority of the cashier to employ an attorney for the purpose of collecting outstanding claims due the bank? If it was, then the liability of the bank is established beyond peradventure, inasmuch as the evidence warrants the finding as to the *711 retainer, and there is no reason, therefore, for interfering with the conclusion expressed in that regard.
The power and authority of a cashier have been stated, discussed or defined in many cases. “He .is,” says Justice Swayne, “the executive officer through whom the financial operations of the bank are conducted. He receives and pays out its moneys, collects and pays its debts, and receives and transfers its.financial securities.” Merchants’ Bank v. State Bank, 10 Wall., 604, 650. See also to the same effect: Bridenbecker v. Lowell, 32 Barb., 9, 17; Wallace v. First Parish of Townsend, 109 Mass., 263. It has also been quaintly observed that, contrasted with the directors, he was the hands and they the mind of the corporation, And again, the directors have been likened to the judges, and the cashier to the clerk of a court—the former adjudicating and directing, and the latter executing the mandate. Chemical Bank v. Kohner, 8 Daly, 530. And it has also been said not only that much of his authority must be implied from the nature of his business, its necessities, its customs and usages (F. and M. Bank v. B. and D. Bk., 26 How. Pr. , 5, 7); but that for many purposes the officers and agents of the corporation of which he is one, may employ persons to perform services for it; and such employment being within the scope of their duty, binds the corporation. Hooker v. Eagle Bank, 30 N. Y., 83, 85. Arid it has been expressly declared that a managing officer or cashier has authority, without a formal vote of the board of directors, to employ counsel. Taylor on Stock Corporation, § 202; Wallace v. First Parish of Townsend, supra. To the same effect see: American Ins. Co. v. Oakley, 9 Paige, 496; Peterson v. The Mayor, 17 N. Y., 449; Mumford v. Exchange Bank, 5 Denio, 355, 359; Bristol Bank v. Keavy, 128 Mass., 298; S. P. Frost v. Domestic Sewing Machine Co., 133 id., 563; Western Bank v. Gilstrap, 45 Mo., 419; Southgate v. Atlantic and Pacific R. R., 61 id., 89, 94.
In Wallace v. First Parish of Townsend, supra, it was said of the treasurer of the parish that it was his duty to collect the notes and other securities belonging to the parish, and he had the incidental power-to commence a suit on them and for this purpose to employ counsel.
And in Bristol Bank v. Keavy, supra, it was held that it would be a great obstacle to the management of savings banks and other corporations if no suit for the collection of a debt could be instituted except by a vote of the directors or trustees; and indeed in all the cases cited the power was recognized and commended or approved, as it should be.
It would be a very easy task to array a variety of reasons why such a power should not only be regarded as incidental *712 but indispensable for the protection of - the property of corporations. Its abuse, if any should exist, can be speedily remedied by the removal of the indiscreet officers. The reported cases falling into line on this subject could be-multiplied if necessary.
There are a series of decisions, it is true, which would seem to militate against the existence of the power mentioned, but they do so, df at all, only inferentially. For example, a cashier has no power to assign or transfer non-negotiable paper without authority of the directors, duly given (Barrick v. Austin, 21 Barb. 241); or to make an agreement that an indorser of a promissory note shall not be liable, Bank of U. S. v. Dunn (6 Pet., 51), Bank of Metropolis v. Jones (8 id., 12), Bank of Whitehall v. Tisdale (18 Hun, 151), affirmed 84 N. Y., 655); or by reason of his official position to bind the bank as an accommodation indorser, West St. L. Sav. Bk. v. Shawnee County Bank (95 U. S., 557), or to settle an account, taking private notes and drafts and giving a receipt in full, Sandy River Bank v. Merchants’ Bank (1 Biss. 146), or to bind the bank by a bond of indemnity to the sheriff, to save him harmless in executing process in favor of the bank, Watson v. Bennett (12 Barb., 90); or to bind the bank as a gratuitous bailee. All these prohibitions, however, clearly do not relate to powers incidental to the authority to collect the debts of the bank. They relate to the disposition of its property, absolutely or by compromise, or to contracts absolute and independent in themselves, and totally distinct from that which is designed to insure such collection, and undoubtedly not within the usual duties of the cashier, discharged without special resolution of the directors. The power and duty to collect necessarily include authority to set the legal machinery in motion to accomplish that result, and debts, it may well be conjectured, must be lost, if, in some emergency requiring the utmost dispatch, the cashier could not act until the board of directors crept together to debate and to decide upon what was to be done.
The first question is thus successfully answered for the plaintiff and renders the discussion of a collateral proposition unnecessary, namely, whether, if the cashier exceeded his authority, the bank was not liable on an implied contract, about which much more may be said in favor of the plaintiff.
The remaining question is, whether the plaintiffs were entitled on the proofs given, to the amount awarded by the referee. From an examination of the evidence bearing on this subject, the conclusion has been reached that the whole amount of the claim should not have been allowed. The statements of the plaintiffs are not in entire harmony and their difference leads to uncertainty, *713 The services rendered as to the Ducker claim were in part performed before the retainer by the bank, and there should be no doubt that the sum earned in that way was deducted from the claim. It was variously estimated at from fifty to one hundred and twenty-five dollars. It is true the plaintiffs insist that Mr. Sanxay, who was examined on behalf of the defendants, is a hired expert; but if so, that does not justify the inference of partiality. He seems to have testified cautiously, and with the intention of giving to the plaintiffs all they deserved. The amount they claim rests, it must be said, upon their evidence, and although a lawyer may be the best judge of the value of his own services, he may, nevertheless, under or over estimate it, and his judgment cannot in all cases be regarded as conclusive. Here the impression left on the mind, in consideration of all the proof on the subject, is that the sums stated by Mr. Sanxay, in all amounting to $960, should have been adopted by the réferee, in addition to the disbursements proved to have been made, namely, sixty-one dollars and forty-one cents, making in all $221.41.
The judgment should be modified, therefore, by reducing the finding to that amount and interest thereon, and as so modified the judgment should be affirmed, without costs to either party.
Daniels, J.
On the theory maintained as to the effect of the evidence, there should be a new trial. But it was in conflict on the subject of value, and the referee does not seem to have erred in following that given for the plaintiff, and that entitles them to an affirmance.
Davis, P. J.
Where a bank has its duly authorized attorney and counsel, appointed by the board of directors, to take charge of its law business and affairs, the cashier has no general authority which empowers him to retain other attorneys or counsel for the bank at his discretion or pleasure. The action of the board of directors in appointing the attorney and counsel of the bank takes away from the cashier all implied authority to do the same thing with respect to every portion of its business.
Where a cashier under such circumstances has assumed to employ another attorney, it must be shown that his act has been recognized or approved by the board in some form that amounts to a ratification of the act. I dissent, therefore, from the opinion of the court and its conclusion, but as my brother Daniels is for affirmance, and my brother Brady for affirmance with a modification, I concur in the modification proposed by my brother Brady, which result, therefore, is an affirmance of the judgment as modified.