## COMMONWEALTH *vs.* CHARLES H. HATFIELD.

Since the St. of 1830, c. 186, § 1, it is no objection to an indictment for perjury on an examination before a commissioner "legally authorized and duly qualified to take bail" to be accepted as bail for a person committed to jail, that it does not allege whether the person was committed with or without an order fixing the amount of bail, or that any notice was given to the officer who committed him to jail, although the Gen. Sts. c. 170, § 37, require such notice if the amount is not fixed; and exceptions taken at the trial of the indictment, to the admission of the record of the proceedings, will not be sustain 1, if they fail to show any irregularity in the proceedings.

An indictment for perjury, which avers that the defendant, having offered himself as bail, was required by the bail commissioner to make, and did make, a written statement of his property, the same being material to aid the commissioner in determining whether to accept him, and, being duly sworn, did falsely, knowingly and corruptly depose and swear in and by said written statement, (here setting forth the words of a statement purporting to be signed by the defendant,) sufficiently alleges that the defendant knowingly and falsely made statements under oath which were material, and is supported by proof that the defendant made oath to the matters contained in the statement set forth in the indictment, and that such statement was material, although the body of the statement was written by the commissioner, and the defendant was sworn to its truth before and not after affixing his signature.

An indictment for perjury can be maintained against a person for making a false statement, on an examination to be admitted as bail, to the effect that he owned certain parcels of land, if he did not own some of the parcels, although the value of others of the parcels, which he did own, was sufficient to cover the amount of bail for which he offered himself.

At the trial of an indictment for falsely swearing that the defendant owned a dwelling-house, evidence was introduced tending to show that the house was devised to the defendant's wife. *Held,* that the testimony of a witness was admissible that he had examined the indexes in the registry of deeds from before the date of the devise to the present time, and found no conveyance of the house to the defendant or any one else.

INDICTMENT, in Suffolk, for perjury, setting forth in substance tLat Mary Ross was committed to jail by order of the municipal court of the city of Boston, for failure to find sureties for her appearance before said court ; that the defendant, before John G. Locke, a commissioner "legally authorized and duly qualified to take bail," offered himself as bail and security for her ; that he was lawfully required by the commissioner, "pursuant to the course and practice of taking and approving bail, to make a written statement of his, said Hatfield's, circumstances and property, the same being material to aid said commissioner in determining whether he would and should take and approve said Hatfield as such bail and surety ; and that said Hatfield did then and there,

in pursuance of said requirement, make said written statement, and being then and there duly sworn did then and there falsely, knowingly and corruptly depose and swear in and by said written statement " (which was set forth in the indictment, and purported to be signed by the defendant) that he was the owner of four dwelling-houses in Medford, of the value of $11,000, and of three houses in Boston, one on Cooper Street and two on Hanover Street, all of the value of $20,000, whereas he was not the owner of any houses in Medford, and was not the owner of the house on Cooper Street or of the houses on Hanover Street, in Boston, as he, " at the said time he so deposed and swore as aforesaid, then and there well knew."

The defendant moved, in the superior court, to quash the indictment, because there was " no allegation therein of any committal of Mary Ross, with an order fixing the amount of the recognizance, nor any allegation that in the absence of such order, so fixing said amount, reasonable notice of the application of said Mary Ross was given to the officer by whom she was committed; " and also because there was no allegation that the defendant was required to make the written statement under oath, or that he was sworn to make a true written statement, or that he was sworn to the truth of it. But *Putnam,* J., overruled the motion.

At the trial, the clerk of the municipal court attended as a witness, with the record of that court in the case of Mary Ross, who was complained of for larceny. The record had not been extended, but the clerk produced his docket with the entries therein, and all the papers in the case which were on file, including the complaint, warrant, mittimus, recognizance, and the written statement as set forth in the indictment, purporting to be signed by the defendant and which the clerk testified was filed by Locke.

The evidence tended to show that the defendant offered himself as bail before Locke; that Locke swore him to make true answer to such questions as he should put to him; that he then questioned him, and wrote down the answers; and that the defendant was sworn to the statement after it was drawn up, and then signed it.

There was evidence that the houses in Boston were devised in 1861 to the defendant's wife, by her mother's will. The Commonwealth then called Heman W. Chaplin as a witness, and he was allowed, against the defendant's objection, to testify that he had examined the classified indexes in the registry of deeds of Suffolk County, from one year before the death of the mother of the defendant's wife down to the present time, and that he found no conveyance of these houses, or any of them, to the defendant or any one.

The defendant requested the judge to instruct the jury that there was a variance between the indictment and the proof, but the judge refused to do so. He then requested the judge to instruct them that the defendant's statements about the houses in Boston were immaterial, because it appeared that the value of the houses in Medford was sufficient to cover the amount of the recognizance. But the judge declined to do so, and instructed the jury "that the materiality of the statement depended upon the question at issue, and the nature of the proceeding; that the commissioner was about to decide whether the defendant, who had offered himself as bail, was a proper person for that purpose; that the inquiry for the jury then was, whether what property the defendant owned was or was not a material matter for the commissioner to inform himself about in determining that question, and whether or not the statement was made by the defendant for the purpose of inducing the commissioner to take him as bail, and was calculated to influence him in doing so; and that the inquiry was not as to whether, in point of fact, the defendant was sufficient as bail, even if he did not own this property, but as to the materiality of his representations as to his sufficiency."

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*W. W. Warren*, for the defendant.

*C. Allen*, Attorney General, (*J. C. Davis*, Assistant Attorney General, with him,) for the Commonwealth.

COLT, J. 1. The defendant moves to quash the indictment because it fails to allege facts necessary, as he claims, to the jurisdiction of the bail commissioner before whom the alleged perjury

was committed. He relies upon the provisions of the Gen. Sts. *c.* 170, §§ 35–37. A person who has been committed to jail, either with or without an order fixing the amount of the recognizance, may be admitted to bail. But when the amount is not fixed, reasonable notice to the officer who committed him is required by the statute to be first given. It is not stated in this indictment, whether the prisoner was or was not committed under an order fixing the amount of the recognizance. And it is therefore insisted that, without the allegation of notice to the officer, the authority of the commissioner is not sufficiently set forth. It would seem that the bail bond or recognizance, even if the notice were not given in fact, would still be valid and binding upon all parties ; and if so, this requirement must be deemed directory in character, and not a condition precedent to the exercise of the jurisdiction. The more decisive answer is, that it is not now necessary, in an indictment for perjury, to set forth the authority of the court or person before whom the offence was committed. It is here averred that the defendant was lawfully required to make a statement of his property before a commissioner authorized and duly qualified to take bail ; and this was a sufficient allegation of authority, as the law now stands. Sts. 1860, *c.* 186, § 1 ; * 1862, *c.* 159, § 1. *Commonwealth* v. *Hughes*, 5 Allen, 499.

2. It is further objected, that the indictment does not allege that the defendant was required to make a written statement un-

---

* "In every indictment for perjury, or for unlawfully, falsely, fraudulently, deceitfully, maliciously or corruptly taking, making, signing or subscribing any oath, affirmation, declaration, affidavit, deposition, bill, answer, notice, certificate or other writing, it shall be sufficient to set forth the substance of the offence charged upon the defendant, (if the perjury be alleged to have been committed in a criminal case,) or the nature of the controversy in general terms, (if the perjury be alleged to have been committed in any civil suit or proceeding,) and by what court, or before whom the oath, affirmation, declaration, affidavit, deposition, bill, answer, notice, certificate or other writing was taken, made, signed or subscribed, without setting forth the bill, answer, information, indictment, declaration, or any part of any proceeding, either in law or in equity, and without setting forth the commission or authority of the court or person before whom the offence of perjury was committed."

der oath ; or that he was sworn to make it ; or that he was sworn to the truth of it, when made. The indictment contains all the material averments to be found in *Commonwealth* v. *Hughes*, 5 Allen, 499. It sufficiently alleges, as we construe it, that the defendant knowingly and falsely made statements under oath which were material. It can make no difference that, either before or after the oath was administered, the statements made were reduced to writing and signed by the defendant. The offence consists in the false statement of material facts under oath, knowing them to be false, without reference to the mode of statement, whether oral or written. *Commonwealth* v. *Carel*, 105 Mass. 582.

3. The clerk's docket and the papers filed in the case constitute the record, and are competent evidence until the record is extended. *McGrath* v. *Seagrave*, 2 Allen, 444. There is nothing in the exceptions to show any irregularity in these proceedings, or that they were not sufficient to give the commissioner authority to act. If the record showed that the amount of the recognizance was fixed by the order of the court, it would be sufficient, without regard to the question of notice to the officer.

4. There was no variance, for the reasons already given, between the proofs as to the manner in which the statements were made and sworn to, and the allegations in the indictment. The proof was ample, that the defendant made oath to the matters contained in the written paper. If it were a question of variance between the paper produced and the recital in the indictment, it would be sufficient, under the recent statute, if the identity of the instrument was evident and the purport sufficiently described to prevent prejudice to the defendant. St. 1864, *c.* 250, § 1.

5. It was not necessary for the government to prove the falsity of the statement in all its details. If the defendant did not own all the items of property enumerated, then it was false and material as a representation of his responsibility as surety, even though a part of the property was sufficient to cover the amount of the recognizance. The evidence to prove the falsity was competent. It would perhaps have been sufficient to prove title in the defend

ant's wife under the will, and rely on the presumption of its continuance in her; but the fact that the records showed no conveyance from her, in the absence of any evidence of title in the defendant, strengthens the presumption of title still in the wife.

We see no error in the rulings, refusals or instructions of the superior court.                                   *Exceptions overruled.*