BRISTOL COUNTY SAVINGS BANK *vs.* THOMAS J. KEAVY.

Bristol.   Oct. 28, 1879. — Feb. 27, 1880.   COLT & AMES, JJ., absent.

A treasurer of a savings bank may direct a suit to be brought on an overdue note; and if, judgment being obtained, and land taken·on execution set off to the bank, the attorney of the bank, acting under the direction of the treasurer and of a trustee, to whom such matters have been entrusted, accepts seisin, and brings a writ of entry to recover possession of the land, it is no objection to the proceedings that a previous vote of the trustees authorizing them has not been passed.

On the issue whether a conveyance of real estate is fraudulent as to creditors, evidence of the register of deeds for the district in which the estate lies, that he has searched the records of the registry, and found that there was no other property standing in the name of the grantor, is admissible.

A real-estate broker and auctioneer, who has been accustomed for five years to value and sell real estate in various parts of a city in which a parcel of land is situated, and who has appraised land on the street where the land lies, is qualified to testify to the value of the land, although he has not sold land on that street.

At the trial of a writ of entry to recover possession of a parcel of land, set off to a creditor of A. on execution, and alleged to have been previously fraudulently conveyed to the tenant by A. with the intent to hinder, delay and defraud his creditors, the tenant asked the judge to rule that, if he bought the property from A. knowing that the effect of it would be to deprive the creditors of the power of reaching the property of A. by legal process, it was not fraud at common law.  The judge declined so to rule, and ruled that, if such was the fact, it was not of itself fraud at common law, but had some tendency to prove fraud; and also ruled that the demandant must satisfy the jury either that there was no real sale to the tenant, or that, if there was a real sale, it was made by A. for the purpose of hindering, delaying and defrauding his creditors, and that the tenant knew of and assisted in such fraudulent purpose.  *Held,* that the tenant had no ground of exception.

WRIT OF ENTRY, dated February 1, 1878, to recover possession of a parcel of land in Fall River.  Plea, *nul disseisin.*  Trial in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows:

The demandant contended that the demanded premises were fraudulently conveyed to the tenant on April 1, 1876, by James Keavy, with intent to hinder, delay and defraud his creditors. It appeared in evidence that the demandant recovered judgment against James Keavy upon a note which was due and payable at the time said conveyance was made; that execution issued on January 15, 1877, and, on February 5, 1877, was levied under the Gen. Sts. *c.* 103, § 1, by setting off the demanded premises to the demandant, seisin thereof being delivered to and accepted by the attorney who brought the action.

The tenant contended that this suit was brought without any authority given by the demandant, and that the acceptance of seisin by the attorney was also unauthorized by the demandant. It appeared that the business of the demandant was conducted by trustees and a board of investment; that no vote had been passed by the trustees or board of investment authorizing the bringing of the suit in which the execution was issued, or the acceptance of seisin by the attorney, or the bringing of this suit, until June 3, 1879, when, at a legal meeting of the trustees, the following vote was passed: " Voted, That all proceedings in the matter of Bristol County Savings Bank *vs.* Daniel Malone and others, including the attachment and set-off to said bank of the property of Daniel Malone, and of the property of James Keavy, the record title of which stood in the name of Thomas J. Keavy, the acceptance of seisin of the same on behalf of the bank, and the bringing of a writ of entry against Thomas J. Keavy in the name of said bank to recover said premises, are hereby accepted, ratified and confirmed as the acts of said bank."

The demandant's treasurer testified that he had general charge of the business of the bank; that matters relating to Fall River loans were left in the charge of Joseph E. Wilbar, one of the board of investment, who received applications for Fall River loans, which were referred to the committee of investment; that these loans were so managed, at the request of the other officers of the bank, but there was no vote or resolution to this effect; and that the witness and Wilbar placed the matter in the hands of an attorney, with directions to proceed against the parties on the note; but there was no record of any vote or resolution

authorizing the same, or the bringing of the writ of entry, except the above vote of June 3, 1879.

Joseph E. Wilbar testified that the management of the Fall River loans, as above referred to, had fallen upon himself in connection with the treasurer; that the applications for the same were always sent to him; that he had a talk with an attorney about the note of James Keavy, and authorized the attorney to bring suit against the parties on the note, assuming that he had authority to do so, but gave no notice to the rest of the board of investment that he had authorized the suit to be brought, and no person authorized him to bring it; that he was notified that the property had been set off to the bank on the execution, and he recorded the execution; that the matter of bringing the writ of entry was talked over by him and the attorney, and instructions given to the latter to bring it; and that the witness was present at the time the vote of ratification was passed, which was subsequent to the commencement of this suit.

Upon this evidence, the tenant asked the judge to rule " that the bank had not authorized the commencement of this action, that the subsequent ratification was too late, and that the bank had not authorized any person to accept seisin." The judge refused so to rule ; and ruled that the action was properly authorized, and could be maintained.

The treasurer was asked, against the tenant's objection, " What knowledge did the directors of the bank have of the commencement of this suit from any information you gave them ? " The witness answered, " On June 3, 1879, I made a communication to the trustees that there had been a set-off of this property of James Keavy held in the name of Thomas J. Keavy, and they then ratified the acceptance of seisin and commencement of this suit, as appears by the vote of record."

It also appeared that Wilbar was the register of deeds for the North Bristol District; and, as tending to show that James Keavy had not, at the time of the alleged fraudulent conveyance, any other property than that so conveyed, the demandant, against the tenant's objection, was allowed to ask the witness whether he had searched the records of his registry to see whether at the time of the conveyance to Thomas J. Keavy there was any other property standing in the name of James

Keavy on said records; and what he found. The witness answered that he had searched the records for this purpose, and had found nothing.

Henry T. Buffington was called as a witness by the demandant, to show the value of the premises at the time of the conveyance from James Keavy to the tenant, and testified that he was the officer who set off the premises on execution; that he was a real-estate broker, and had been since March 1879; that he had also been an auctioneer for five years, and during that time had been accustomed to value and sell real estate in different parts of the city; that he had not sold land on the street where the property in question was situated, but had appraised land on that street about the time this land was conveyed. He was then asked by the demandant, "How much in your judgment were the premises worth at the time they were conveyed?" This question was objected to by the tenant, on the ground that the witness was not qualified, but was allowed by the judge.

The tenant asked the judge to rule as follows: "If Thomas J. Keavy bought the property from James Keavy, and knew at the time of the purchase that the effect of the purchase would be to deprive the creditors of the power of reaching James Keavy's property by legal process, it is not fraud at common law." The judge declined so to rule, but ruled as follows: "If Thomas J. Keavy bought the property from James Keavy, and knew at the time of the purchase that the effect of the purchase would be to deprive the creditors of the power of reaching James Keavy's property by legal process, it is, in and of itself, not fraud at common law, but has some tendency to prove fraud, the force and effect of which the jury will determine."

The following instructions were also asked for by the tenant, and given by the judge: "The burden of proof is on the plaintiff to show fraud on the part of Thomas J. Keavy; even though James Keavy meant to cheat, hinder or delay his creditors, if Thomas J. Keavy did not intend to assist him, then there is no fraud. Although the effect of the sale of the property is to keep the Bristol County Savings Bank from collecting their debt from James Keavy, still, if Thomas J. Keavy did not intend to assist James Keavy to cheat, hinder or delay the

bank, or his creditors, it is not fraud on the part of Thomas J. Keavy."

The judge, without objection on the part of the tenant, also instructed the jury that the demandant must satisfy them upon the whole evidence in the case, either that there was no real sale of the property to the tenant, that it was a mere paper conveyance for a fraudulent purpose to hinder, delay and defraud creditors, or that it was a real sale made by James Keavy for the purpose of hindering, delaying and defrauding his creditors, and that the tenant knew of and assisted in such fraudulent purpose.

The jury returned a verdict for the demandant; and the tenant alleged exceptions.

*J. W. Cummings*, for the tenant.

*A. J. Jennings*, (*J. M. Morton, Jr.* with him,) for the demandant.

SOULE, J. The evidence of the treasurer of the demandant, that the proceedings for enforcing the claim which was the foundation of the original suit were begun by his direction, being uncontrolled, showed that the original suit was duly authorized by the demandant. *Wallace* v. *Townsend Parish*, 109 Mass. 263. It would be a great obstacle to the successful management of savings banks and other corporations, if no suit for the collection of a debt could be instituted except by vote of the trustees or directors. The treasurer of the demandant might well cause suit to be brought to collect an overdue debt. And the subsequent steps of levying execution, accepting seisin, and bringing this action to try the title to the premises levied on, are merely incidental to the original suit to collect the debt, and absolutely necessary in order that the fruit of that suit be not lost. It might well be held that it needs no additional authority to attorneys regularly employed to collect a debt, to empower them to bring a writ of entry to try the title to land levied on to pay the judgment obtained, when such action is necessary to save the title acquired by the levy; but when the whole proceedings are had under the immediate direction of one of the officers of the demandant corporation, who has special charge of that class of matters to which the one in question belongs, it is clear that the whole proceedings are had with due authority from the demandant.

The evidence of the treasurer, as to the communication which he made to the trustees when the vote of ratification was passed, was competent for the purpose of showing the circumstances under which that vote was passed. It was not offered to prove the truth of anything which the communication recited, but only to prove that the communication was made, as part of a transaction.

The evidence of the register of deeds as to the result of his examination of the records was properly admitted. *Commonwealth* v. *Hatfield*, 107 Mass. 227. The whole evidence is not reported, but it is clear that the question, whether James Keavy had any other property than that in dispute when he conveyed to the defendant, was an important one to decide, in ascertaining whether the conveyance was fraudulent or not.

The witness Buffington was plainly qualified to testify as to the value of the land. He was a real-estate broker and an auctioneer, and was accustomed to sell and value lands in various parts of the city, and had appraised land on the street where the premises are situated.

The instructions given to the jury were sufficiently favorable to the defendant. He was not entitled to the ruling asked for, without qualification, and, as qualified, the instructions fully protected him in his rights. Under them, the jury could not have returned a verdict against him, without finding that James made the conveyance with the purpose of hindering his creditors, and that the defendant intended to assist him in hindering and defrauding them.                    *Exceptions overruled.*