LEO H. WEADOCK v. THE STATE.

No. 12952. Delivered May 7, 1930.
Rehearing Denied April 1, 1931.

538

The opinion states the case.

*Soule & Barnes, Clarence Kendall* and *Berry, Berry & Smith,* all of Houston, and *Black & Graves,* of Austin, for appellant.

*O'Brien Stevens,* Crim. Dist. Atty., and *E. T. Branch,* Asst. Crim. Dist. Atty., both of Houston, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for perjury; punishment, eight years in the penitentiary.

On February 13, 1929, appellant made affidavit to an account against the estate of Jim Collins, deceased, which was itemized, the aggregate amount claimed being $635, which account was transferred to one Kraft by appellant on the same day in consideration of $600 paid him by Kraft. Appellant was an undertaker, and the items of said account were for the supposed funeral expenses of said Collins, and included an item of $360 for a casket, $35 for a burial suit, $25 for a hearse, $7.50 for one car, $25 for embalming, $15 for transferring, and $17.50 for grave. On February 15, 1929, one Dwyer, a former employee of appellant, made affidavit that the body of Collins was not buried in a casket, etc. The grave was opened and it was found that Collins' body had been buried without clothing of any kind and in a plain pine box said to be worth some $6, no casket or ground box being used. Appellant's indictment and conviction for perjury, based on the false making of said affidavit, followed. The allegation in the indictment was that in swearing to the items of $360 for a casket and $35 for a burial suit appellant was guilty of perjury.

It is first set up in appellant's brief that the account sworn to by appellant was not such claim against the estate of decedent as to the administrator was permitted by law to allow, hence the matter sworn to was of no materiality, and appellant could not be held for perjury even if the facts sworn to be false. The ground for this contention appears to be that appellant himself had been appointed temporary administrator of this same estate on December 23, 1927, and had not resigned or been removed until December 5, 1928; and that not having filed his claim verified by affidavit within six months after the grant to him of such let-

ters of administration, said claim was barred under the terms of article 3526, Vernon's Complete Statutes of Texas. This contention might be disposed of upon several grounds. Appellant's appointment was but as temporary administrator, and in such case he had only those powers and duties set out in the appointing order, and the payment of claims against the estate not being so included, the failure of appellant while such temporary administrator to file his own personal claim against the estate within the six months referred to in article 3526, would hardly cause such claim to be barred. It might also be observed that there are many authorities holding that even though the claim appear technically barred, still if same had been allowed by an administrator and thereafter approved by the court, same might become a valid claim against the estate. However, we do not deem it necessary to analyze or cite authorities in support of the above proposition since the following facts are true in this case, viz: Appellant qualified as temporary administrator on December 23, 1927, and at that time, according to this record, the body of Collins was lying in appellant's undertaking shop, unburied, and hence there could arise in appellant's favor no claim for a casket or a burial suit. The negro employe of appellant, who drove the vehicle to the cemetery conveying the body of Collins, testified that this burial took place sometime between Christmas and New Years of 1927. It is provided in article 3528, Vernon's Complete Statutes of Texas, that the provisions of chapter 18 of the title Estates of Decedents in said statute,—which includes article 3526,—shall have no application to the presentation of claims against such estate which arise after the administrator has qualified. This would effectually dispose of appellant's contention. He had no claim for a casket or a burial suit until after the date of his appointment as temporary administrator, and under the terms of article 3528, supra, such claim thereafter accruing, same could not be held barred because not presented within six months.

Appellant's next contention is that his special charge No. 1 should have been given. Same sought to have the jury told that if the notary who was alleged to have administered to appellant the oath verifying said account, did not administer an oath to him, or if said notary left out any part of said oath, if she did administer same,—the jury should acquit. In his charge to the jury the court told them that if appellant was not sworn by said notary, or if the jury had a reasonable doubt thereof, they should acquit him. Said notary testified on the stand that appellant signed the written affidavit verifying said account in her presence. Asked if she swore appellant to same, she testified as follows:

"When I asked him if he swore to and subscribed to it I think he said, 'Yes,' or nodded his head,—I don't know which. He said yes or

nodded his head, I don't know just which he did, I don't remember now. Then I swore him to it as a notary public."

And further she swore: "Well, he said, 'Yes.' He talked low; I could not tell whether he said yes or 'I do,' but he nodded his head, too. I don't remember just which he said, whether yes, or 'I do' but I took it that he did. Yes, it was one or the other, to the best of my memory. It was either, 'I do,' or 'Yes,' and nodded his head."

We find nothing in any other testimony supporting any theory that only a partial oath was administered to appellant, or that anything was left out of the oath. To call for the giving of any charge, there must be before the trial court testimony raising the legal issue involved. Why then give a charge that if the notary "Left out any part of the oath in administering the oath to the defendant?" Would such instruction be regarded by the jury as applying to the omission of some word, or some phrase not mentioned or referred to in the charge? The giving of such charge could have no other effect than to confuse and likely mislead the jury. As said in Dennington v. State, 98 Texas Crim. Rep., 332, 265 S. W., 698: "The county clerk testified that appellant signed the affidavit and he swore him to it. There is no invariable formula prescribed for taking such affidavit and we think the testimony sufficient on the proposition that appellant was shown to have been sworn."

The only testimony upon the point as to what was actually said by the notary appears in the quotation above.

The point is made in appellant's brief that there was unnecessary description of the oath in the indictment, and that same was not met by proof. Such proposition was not advanced during the trial, but we are of opinion that if same had been, the court would have correctly held it unsupported. Appellant cites certain cases upon this contention which on their facts appear to be correct. Massie v. State, 5 Texas App., 81; West v. State, 8 Texas App., 122; Waters v. State, 30 Texas Crim. Rep., 287, and Beach v. State, 32 Texas Crim. Rep., 252, are cited, but none have any application here. The indictment in the instant case sets out that the written affidavit attached to the verified account was "Sworn to and subscribed before me this 13th day of February, 1929, Frances Lawrence, Notary Public, Harris County, Texas." In Massie v State, and Waters v. State, supra, we find cases wherein the official character of the person taking the oath was set out at unnecessary length and the question of failure to prove such details was raised. In the Waters case there was a written verification of a note almost, if not exactly, like the one before us,—but neither in that case nor any other do we find any holding that when a man signs such verification, the proof must show that the notary went over with such affiant each item and element in either the document or the form prescribed for verification. The function of the officer is to see that the document or verification is subscribed in his

presence, and that the subscriber affirms or swears that the things contained in the document subscribed are true. The matters in the document or in the subscribed verification, do not have to be repeated in the jurat of the officer.

The charge of the court was further excepted to for failure to submit affirmatively the defensive theory,—but there appears therein no suggestion as to what was such defensive theory. The jury were told in the court's charge that a false statement made by mistake was not perjury, and that if appellant believed at the time he made said statement in question that it was true and correct, or if the jury had a reasonable doubt thereof, they should acquit. The special charge, viz: that if appellant had been told that Collins had been buried in a casket and suit as set out in the affidavit, and believed this to be true, etc., he should be acquitted, and further the charge that if they believed that appellant was away from Houston drilling an oil well, and was not present and did not know that the casket and suit had been left out in burying Collins,—were no more pertinent or more favorable to appellant than was the charge given by the court and above referred to. Such charges would appear open to the objection that they were upon the weight of the testimony.

We think the indictment sufficiently negatives the truth of the matters therein set up as those falsely sworn to by appellant, and sufficiently sets out what the truth was regarding the two items of indebtedness set out in said account as being the ones relied on by the state as the basis of this prosecution. It is alleged that appellant did not furnish or use in burying Collins any casket, but on the contrary buried him in a cheap pine box; also that he did not use or furnish any burial suit for Collins, appellant stated that said account "Is true and correct," and that "All but buried his body naked.

The form of verification set up in the indictment as sworn to by just and legal offsets, payments and credits have been allowed." It is urged in the motion to quash that in as much as article 3514, Rev. Civ. Stats., 1925, provides that the verification of such claim against the estate of a decedent shall state that same is "Just", and further that all legal offsets, payments and credits "Known to affiant" have been allowed, —that the verification of the account here set forth is not in accordance with the statute. We think the trial court committed no error in overruling the motion to quash. The omission of the words "known to affiant" could not weaken or invalidate the verification; and it has been the rule in this state since the rendition of the opinion in Crosby v. McWillie, 11 Texas, 94, that the exact language of the statute in question need not be followed, but that if other words substantiatlly equivalent be used, this would suffice. Appellant cites Walters v. Prestidge, 30 Texas, 66, in which opinion the holding in Crosby v. McWillie, supra, is expressly upheld.

Appellant insists that this case should be reversed because the verdict and judgment are so excessive as to amount to the cruel and unusual punishment forbidden by the Constitution. We cannot agree to this contention. It may be doubted if any set of facts could manifest a more sordid, conscienceless effort to appropriate the money of a dead man to the use and benefit of another than those in this record. The details are little short of revolting and will not be set out at length.

Appellant also insists that the preponderance of the testimony is against the fact that he was sworn to the account referred to. He testified he did not swear to it,—his witness Kraft, to whom the account in question had been transferred by appellant, also swore that he was present when appellant signed the verification, and the notarial jurat was affixed, and that he did not hear the notary swear appellant to the account. We think the jury entirely justified in not believing either of these witnesses.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

#### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In his motion for rehearing the appellant, through his counsel, stresses his contention that the affidavit upon which the conviction is based is not in compliance with the statute, either in form or in substance. The statute, article 3415, R. S., 1925, reads thus:

"No executor or administrator shall allow claim for money against his testator or intestate, nor shall the county judge approve the same, unless such claim is accompanied by an affidavit that the claim is just and that all legal offsets, payments and credits known to affiant have been allowed. Such affidavit, if made by any other person than the owner of the claim, shall state further that the affiant is cognizant of the facts contained in his affidavit."

The affidavit reads as follows:

"BEFORE ME, the undersigned authority, on this day personally appeared Leo H. Weadock, who being by me first duly sworn, states on oath that the above and foregoing account is a true and correct, and that all just and legal offsets, payments and credits have been allowed."

Appellant contends that the difference in the verbiage characterizes the affidavit as void. Several precedents are cited, namely, Strickland v. Sandmeyer, 21 Texas Civ. App., 351, 52 S. W., 87; Whitmire v. Powell (Texas Civ. App.), 117 S. W., 433. It is thought that the case of Strickland v. Sandmeyer, supra, does not warrant the conclusion that the affidavit omitting the word "just" is void. Sandmeyer was the administrator of the estate of Mary Jane Gordon, deceased. Strickland was an administrator de bonis non, and as such filed a claim against the estate of Sandmeyer, and on the claim sued Sandmeyer's administrator

and bondsmen. The sole question, according to the court's decision, was whether Strickland had the legal status of administrator de bonis non. The trial court held the contrary. The appellate court held that the appointment of Strickland was not open to a collateral attack and reversed the judgment. Strickland had filed an account and affidavit which omitted the words "the claim is just, and that all legal offsets, payments, and credits known to affiant have been allowed." The appellate court said that the affidavit was insufficient, but that Strickland's right as administrator de bonis non to sue the bondsmen of his predecessor did not require a verified account. No decision concerning the validity of the affidavit was necessary to the decision of the case.

The case of Whitmire v. Powell, supra, was a suit upon a claim rejected by the administrator in which there was an absence of a pleading showing that any affidavit had been made. The relevance of the case is not perceived.

It has been held in many cases that a claim against an estate could not be legally rejected on account of the form of the affidavit, provided its effect was to convey the same meaning as the affidavit prescribed by statute. See Crosby v. McWillie & Moreland, 11 Texas, 94. Other Texas cases declaring that a substantial compliance with the statutory language is sufficient are Gaston v. McKnight, 43 Texas, 619; Cannon v. McDaniel, 46 Texas, 309.

Following the brief of appellant's counsel, we have so far considered the affidavit in its relation to civil cases. In such cases the inhibition against the allowance or payment of a claim not authenticated in the manner prescribed by statute is not absolute. The Supreme Court of this state has often held that the administrator was entitled to credit for money paid upon a claim not properly authenticated or not authenticated at all. See Hanlon v. Wheeler, 45 S. W., 821; Wessendorff v. Aylor, 5 S. W. (2d) 793; Trammell v. Blackburn, 116 Texas, 388; Parsons v. Parson (Texas Civ. App.), 275 S. W., 200; Scott v. Taylor (Texas Civ. App.), 294 S. W., 227.

In a trial for perjury it has been said that defects in an oath or affidavit, not jurisdictional, which have been waived by the parties, are not fatal to the conviction. See Manning v. State, 46 Texas Crim. Rep., 330, citing Bishop's Cr. Law, 5th Ed., 1028; also secs. 842, 850; 1 Bishop Cr. Proc., 112, 118. It has also been said that a false affidavit may warrant a conviction of perjury though the affidavit be defective. Corpus Juris, vol. 48, p. 846, sec. 59; Meyers v. United States, 5 Okla., 173; Arnold v. State, 132 Pac., 1123; Clay v. State, 52 Texas Crim. Rep., 555. In Wharton's Cr. Law, 11th Ed., vol. 2, p. 1681, sec. 1522, it is said:

"Where the court has jurisdiction of the subject-matter of inquiry, it is not necessary that the proceeding should be strictly regular. But if

from want of some essential condition (e. g., an issue) no jurisdiction attached, perjury cannot be manintained."

In Manning's case, supra, a false oath was made in answer to written interrogatories in a deposition. There had been no commission issued to the officer who took the depositions. In affirming the case, the court adopted as its opinion the brief of the attorney general, from which the following quotation is taken:

"The correct rule seems to be that if the court has jurisdiction of the subject matter of the suit and the oath is required by law, irregularities in the proceeding will not prevent perjury."

Among the cases cited is Maynard v. People, 135 Ill., 416, upon which the opinion in the Manning case comments in the following language:

"In the Maynard case, the Supreme Court of Illinois says: 'We understand the doctrine to be that although a tribunal must have jurisdiction of the cause of proceeding before perjury can be committed therein, yet that where the defect renders the proceeding voidable only and not absolutely void, and such proceeding is amendable, or where the defect has been waived by the parties there may be perjury committed. Bishop Cr. Law, 5 ed., 1028, and authorities cited in notes. So also one may, if he will, and under some circumstances, waive even a right which the Constitution secures to him. Bishop Cr. Law, secs. 842, 850; 1 Bishop Cr. Proc., 112, 118. In the proceedings here involved plaintiff in error elected to waive the right to quash the process or dismiss the complaint and to go to a hearing upon the merits and introduced testimony. If such conduct left the record destitute of an essential part, it perhaps did not estop him from afterwards taking advantage of the defect in it in case of conviction therein, but at the same time it should be considered as a waiver of any right to claim that perjury could not be assigned upon false testimony given by him upon such hearing.' "

In the present instance, the affidavit was filed in the probate court having jurisdiction of the estate. The affidavit was treated by the probate court and the administrator as proper authentication of the claim, and favorable action thereon inured to the benefit of the accused. The approval in the court having jurisdiction of the estate implies that the authentication of the claim was regarded as substantial compliance with the statutory requirements. Apparently it would be difficult to demonstrate that in reaching such conclusion there was error. To the mind of the writer, the distinction between the assertion that the claim is "just" and the assertion that the *attached account is true and correct and that all "just" and legal offsets, payments and credits have been allowed,"* is not apparent. To declare the authentication invalid would be to turn aside from the often-declared rule, that in such matters the law looks to

the substance and not to the form, and to cling to the letter rather than to the effect of the language.

It was essential that there be adequate evidence that the appellant swore to the affidavit. The appellant contends that in the particular mentioned the record is insufficient. Frances Lawrence, the notary public before whom the oath was made, testified that she saw Mr. Weadock sign the affidavit and that she remembered that he made the affidavit. The following statement is regarded as sound:

"To constitute a valid oath, for the falsity of which perjury will lie, there must be, in the presence of a person authorized to administer it, an unequivocal act by which affiant consciously takes upon himself the obligation of an oath." 30 Cyc., 1416.

If the testimony of the officer before whom the affidavit is charged to have been made is true, the appellant, in the presence of said officer, signed the affidavit, and in answer to an inquiry as to whether he swore to it, gave his affirmative assent by stating, "Yes" or "I do." It appears from his own testimony that he was present and took charge of the affidavit and used it for his own benefit, though he denies that he stated that he swore to it or that he was asked any questions upon that subject. The conflict in the evidence was a question for the jury which was submitted to them. The appellant sought to have the jury instructed in effect that unless the notary public repeated the words in the affidavit in the presence of the appellant and embraced the words in the affidavit in the oath, that there should be an acquittal. The court declined to give that charge but instructed the jury that if the affidavit was not sworn to, or if upon that subject they had a reasonable doubt, there should be an acquittal. The testimony of Miss Lawrence, if believed by the jury, is deemed adequate to comply with the law with reference to the administration of the oath to the appellant, and the details called for in the special charge requested by the appellant are not regarded as necessary to the validity of the oath to the affidavit. The indictment sets out the account and the affidavit avers that the oath was duly administered to the appellant by Frances Lawrence. It has been held a sufficient averment that the accused is duly sworn before some officer authorized by law. See Massie v. State, 5 Texas App., 81; Beach v. State, 32 Texas Crim. Rep., 252; Stewart v. State, 6 Texas App., 184. In the brief for the state are cited a number of cases combatting the idea that the formalities in the administration of the oath for which the appellant contends are necessary. They are as follows: Atwood v. State, 146 Miss., 662, 111 So., 865, 51 A. L. R., 836; State v. Mace, 86 N. C., 668; State v. Day, 108 Minn., 121, 121 N. W., 611; State v. Rupp, 151 Pac., 1111; State v. Madigan, 59 N. W., 490; State v. Miller, 141 Pac., 293; Komp v. State, 108 N. W., 46; Peoples v. Ostrander, 19 N. Y. Sup., 324, 64 Hun., 335. If we comprehend the averments in the

indictment, they are sufficient to show the materiality of the alleged false statement. The account accompanies the statement. The indictment categorically shows that items of the account are fictitious, and the affidavit that they are genuine is false. The indictment avers that the appellant swore that the item of $360 was for a casket furnished for the burial of Collins and the item of $35 was for a suit of clothes in which Collins was buried by the appellant. In the indictment it is stated that the appellant did not furnish a casket or suit of clothes but that Collins was buried naked in a cheap box.

The motion for rehearing is overruled.

*Overruled.*