**STATE of Maine**

v.

**Roger P. BLAISDELL and Arthur John Jenness.**

Supreme Judicial Court of Maine.

April 23, 1969.

Richard A. Foley, Asst. County Atty., Augusta, for plaintiff.

Norman C. Bourget, Augusta, for Roger P. Blaisdell.

Daniel E. Wathen, Augusta, for Arthur John Jenness.

Before WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

Both defendants were separately indicted for perjury under 17 M.R.S.A. § 3001 by the grand jury for the County of Kennebec at the June Term, 1968. On or about March 26, 1968 for the purpose of obtaining the release of one Richard B. Morrell, Jr., then charged with the offense of uttering a forged instrument, Blaisdell and Jenness appeared before a duly appointed and qualified bail commissioner and offered to provide bail for Morrell's appearance at the June term of the Superior Court to answer to the accusation. The defendant Blaisdell is presently charged with perjury for willfully and corruptly falsely swearing that he was the owner of over 400 acres of Woodland in the Town of Thorndike, while the defendant Jenness is similarly accused for willfully and corruptly falsely swearing that he was the owner of two houses in the City of Waterville. The parties agree that any statements relating to their ownership of property made by the defendants to the bail commissioner were made prior to the administration of the following oath which in substance was as follows:

"Do you swear to the truth of the statements that you have made and acknowledge yourself bound and indebted to the State of Maine in the sum of Two Thousand Dollars ($2,000.00) conditioned upon the appearance of Richard B. Morrell, Jr., at the June term of the Superior Court, to answer to a charge of uttering a forged instrument and not depart without license of Court."

After consolidation of the joint motions of the State and each defendant, the Justice below reported for our determination the following issue, all under Rule 37A(a), M.R.Cr.P.,: "Is perjury committed if the false statements are made prior to the administration of the oath?" The parties agreed that if the false statements alleged in the indictment do not constitute perjury when made to the bail commissioner before that official administered the oath above stated, then the indictments are to be dismissed, otherwise the cases are to be remanded for trial. We rule that the defendants must answer to the charge of perjury.

These defendants are accused of violating 17 M.R.S.A. § 3001, which reads as follows:

"Whoever, when required to tell the truth on oath or affirmation lawfully administered, willfully and corruptly swears or affirms falsely to a material matter, in a proceeding before any court, tribunal or officer created by law, or in relation to which an oath or affirmation is authorized by law, is guilty of perjury * * *."

■ We recognize initially that "[e]xcept as the statute has enlarged the scope of perjury by including therein corrupt and wilful false oaths and affirmations outside the common-law definition of the crime, it is declaratory, we think, of the common law and must be construed in harmony therewith and as not making any innovation therein which it does not clearly express." State of Maine v. Shannon, 1939, 136 Me. 127, 130, 3 A.2d 899, 901, 120 A.L.R. 1166. The statute combines both common-law perjury and false swearing in that it integrates under the statutory crime of perjury all corrupt and wilful false oaths and affirmations whether made in the course of judicial proceedings or before a judicial officer (common-law perjury) or in other proceedings before an administrative officer in relation to which an oath or affirmation is authorized by law (common-law false swearing). Statutory perjury thus consists of the following essential elements: 1) there must be a wilful and corrupt false oath, swearing or affirmation; 2) the statement given under oath or affirmation must not only be false but also material; 3) the false and material statement given under oath or affirmation must occur either in a judicial proceeding or before a judicial officer, or must relate to matter as to which an oath or affirmation is authorized by law and is administered by a person legally authorized to do

so. 70 C.J.S. Perjury § 3; 41 Am.Jur., Perjury, § 5.

The instant report raises the question whether or not a bail commissioner is a person authorized by law to administer an oath or affirmation in his examination of the sureties tendered for bail when he inquires into the case and admits a person to bail, and, if so, whether perjury is committed when the giving of the material and false statement precedes the administration of the oath.

It is to be noted that the statutes do not expressly authorize or empower bail commissioners to administer oaths or affirmations. They read as follows:

"15 M.R.S.A., § 855. *Bail after commitment*

Any Justice of the Supreme Judicial or Superior Court, or bail commissioner within his county, on application of a prisoner committed before verdict of guilty for a bailable offense may inquire into the case and admit him to bail."

\*     \*     \*     \*     \*     \*

"14 M.R.S.A., § 5542. *Bail for persons committed for not finding sureties*

When a person is confined in a jail for a bailable offense or for not finding sureties, except when a verdict of guilty has been rendered against him for an offense punishable in the State Prison and except when such person is committed pending decision on report any such commissioner [bail commissioner], on application, may inquire into the case and admit him to bail and exercise the same power as any Justice of the Supreme Judicial Court or Superior Court can; \* \* \*."

Rule 46, M.R.Cr.P., is no more explicit on the point.

"(a) *Right to Bail.* A defendant shall be admitted to bail before conviction and may be admitted to bail after conviction and pending appeal in accordance with the constitution and statutes of this state. \* \* \*"

\*     \*     \*     \*     \*     \*

"(c) *Amount.* If the defendant is admitted to bail the terms thereof shall be such as, in the judgment of the person authorized to fix bail, will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the financial ability of the defendant to give bail, the character of the defendant and the policy against unnecessary detention of defendants pending trial."

\*     \*     \*     \*     \*     \*

"(g) *Practice in Taking Bail.* Every bail commissioner upon taking bail shall endorse upon the warrant upon which the prisoner is held the following facts: date and place (town or city) of taking bail, court and term at which the prisoner is required to appear, the offense of which he is accused, the amount of bail, the names and residences for principal and each surety; or if the bail is taken after arrest and before the issuing of a warrant, shall forthwith deliver to the officer having the prisoner in charge a memorandum, signed by such bail commissioner, containing the foregoing information."

Notwithstanding the absence of an express provision in the statutes or the rule authorizing bail commissioners to examine the proposed sureties under oath or to administer oaths in the taking of bail, nevertheless we rule that the statutes give such authority by implication. In the frst place, under 14 M.R.S.A. § 5542, a bail commissioner in the matter of admission to bail may "exercise the same power as any Justice of the Supreme Judicial Court or Superior Court can"; there is no question concerning the power of the Justices of our Supreme Judicial and Superior Courts to administer oaths. 4 M.R.S.A. § 7; 4 M.R.S.A. § 114. See also, The State v. Corson, 1833, 10 Me. 473.

Furthermore, bail commissioners must be justices of the peace first; this basic requirement is legislative recognition that

when the Legislature adopted laws setting up the bail commissioner and regulating his powers respecting bail, it did not create a new office, but merely allowed that certain justices of the peace practice, in addition to all the other powers conferred upon them as justices of the peace, a particular specialty: the privilege of exercising the power to bail people accused of crime, with the right to use the title of and be known as bail commissioners.

14 M.R.S.A. § 5541. *Bail commissioners appointed by court*

"The Superior Court sitting in each county shall appoint from the number of justices of the peace resident in the county, one or more bail commissioners, who shall hold office during the pleasure of the court. * * *"

This is no different from a doctor specializing in surgery, or a lawyer in corporate work. By legislative fiat, it is only by virtue of the underlying office of justice of the peace that the bail commissioner derives the basic judicial powers conducive to the proper performance of his additional duties respecting the release of persons accused of crime under what has been known from time immemorial as bail. See, State v. Coombs, 1851, 32 Me. 526. The historical development of bail in this State, in the Commonwealth of Massachusetts prior to the separation, in the colonies, and in England prior to the declaration of independence, gives full support to the fact that for most of the time bail was the prerogative of the justice of the peace. The statute of 34 Edw. 3, c. 1, 1360, gave justices of the peace power to bail in very general terms, while in 1486 by the statute of 3 Hen. 7, c. 3, their power to bail was curtailed to the extent that 2 justices of the peace had to act before an accused could be bailed. See, Stephen, History of the Criminal Law of England, Vol. 1, pp. 236, 237. The latter practice was legalized early in this State by an Act respecting bailable offences, Laws of Maine, 1821, c. LXVIII, which read as follows:

"Be it enacted by the Senate and House of Representatives in Legislature assembled, That any one or more of the Justices of the Circuit Court of Common Pleas, or any two Justices of the Peace and of the quorum for any county, on application made to them by any person who now is, or hereafter may be, confined in gaol for a bailable offence, or for not finding sureties, on recognisance, may proceed to inquire into the same, and admit any such person to bail; and for this purpose shall have and exercise the same power concurrently, which any one or more of the Justices of the Supreme Judicial Court, may or can do; any law, usage or custom to the contrary notwithstanding. And the power hereby given shall be considered to extend to taking the recognisance of any person, committed after conviction, where the sentence is in part, or in whole, to find sureties for good behaviour."

We may better conceive the prime and basic characteristic of the bail commissioner, by virtue of his official position as a justice of the peace if we understand fully the meaning of the expression "any two Justices of the Peace and of the quorum for any county." As time flies, I am sure that these titles of an era long gone are gathering dust in the memory of the present generation of lawyers. Justices of the quorum were certain justices of the peace who because of their skill and discretion were issued distinctive commissions investing them with certain important powers such as admitting persons to bail which were denied to ordinary justices of the peace. Main Justice, 1859, p. 10. The Legislature adopted the title of "commissioner" instead of the non-descriptive calling "of the quorum" for justices of the peace chosen by the courts to admit persons to bail. Public Laws, 1873, chapter 137. In fact the lawmakers merely transferred from the executive to the judiciary the right to designate from the number of justices of the peace appointed by the executive those who would be empowered to

bail. Justices of the peace have express power to administer all oaths required by law, unless another officer is specially required to do it. 4 M.R.S.A. § 169. This power of every justice of the peace first appeared in our statutes in 1840. R.S.1840, c. 170, § 12. We therefore hold that bail commissioners, by virtue of their office of justices of the peace, have inherent statutory power to administer oaths.

█ We do recognize that justices of the peace from whose ranks the courts appoint bail commissioners are judicial officers, Opinion of the Justices, 1921, 119 Me. 603, 113 A. 614. Some courts have held that bail magistrates when examining into and determining the sufficiency of the bail perform a judicial function. United States v. Jones, 1890, 134 U.S. 483, 10 S.Ct. 615, 33 L.Ed. 1007; Hodgkinson v. United States, 1925, 5th Cir., 5 F.2d 628; People v. Davis, 1907, 122 App.Div. 569, 107 N.Y. S. 426, [affirmed 191 N.Y. 514, 84 N.E. 1116]. In State v. Baker, 1861, 50 Me. 45, however, this Court stated at page 53 that "[t]he power which is conferred upon magistrates or sheriffs, by these statutes, is not a judicial power. Their action under it is merely ministerial." Other authorities have seen in bail-taking a combination of judicial and ministerial acts, judicial when the allowance of bail and the fixing of its amount are involved, ministerial when the officer takes and approves the bail bond. Clatsop County v. Wuopio, 1920, 95 Or. 30, 186 P. 547; Bottom v. People, 1917, 63 Colo. 114, 164 P. 697. For our present purposes, we need not concern ourselves with the distinction, since perjury under our statute lies not only when a wilful and corrupt false swearing to any material matter occurs in any proceeding in any court of justice, or before any officer thereof, or before any tribunal or officer created by law, but also when it takes place *in any proceeding, or in regard to any matter or·thing, in or respecting which an oath or affirmation is or may be required or authorized by law,* provided the oath is administered by a person legally authorized to administer oaths. [See Re-

vised Statutes of Maine, 1840, c. 158, § 1, before condensation in subsequent revisions.]

█ The issue in final analysis is whether the law authorizes a bail commissioner in bail-taking to compel sureties to justify under oath. Under the statute, 14 M.R.S.A. § 5542, when a person is confined in a jail for a bailable offense or for not finding sureties, any bail commissioner, on application, may inquire into the case and admit him to bail. Rule 46 (c) of M. R.Cr.P., enumerates specific standards to be used in fixing the amount of bail which must not be excessive. Constitution of Maine, Art. 1, § 9. But neither the statute nor the rule spell out the manner in which the bail commissioner shall satisfy himself of the sufficiency of the bail. The object of the statute is to permit the release of the person in confinement and still assure his appearance at court. The statutory purpose will be obtained if bail is authorized "only upon the taking of sufficient sureties." State v. Baker, 1861, 50 Me. 45 at 52. The quality and adequacy of the bail under the statute and rule are left entirely to the fair and honest judgment of the bail commissioner. His duties require an inquiry into the case consistent with the constitutional privilege that persons accused of crime be permitted to be enlarged upon the giving of reasonable bail and at the same time impose upon him the obligation to correctly assess the quality of the tendered bail so that the statutory device to guarantee the accused's appearance at court be not misused and the ends of justice completely frustrated. While he may avail himself of any reasonable sources of information necessary to a correct conclusion, he need not, and perhaps should not, encumber the proceedings with such stringent requirements that compliance therewith may unjustly postpone the bailing process. We take judicial notice that bail commissioners in many instances will find it practically impossible to acquire satisfactory information respecting the quality and sufficiency of the bail to support an honest and intelligent judgment on their part

within the limited time at their disposal. We believe that the Legislature had the whole problem in proper perspective when it invested the power to bail to justices of the peace under the title of bail commissioners and we rule that the statute by implication carries over to the bail commissioner the powers of justices of the peace to administer oaths generally, and specifically the authority to take sworn statements from proposed sureties touching their financial condition.

In Maine Justice, 1859, 2nd Ed., we find the following pertinent paragraph at page 252:

"He should look well to the means and character of the sureties to be required. They should be sureties in fact, and not mere men of straw; and if the justice is not satisfied as to their ability to meet the proposed liability to the fullest extent, or if he is ignorant of the persons offered, it is his duty to inquire into the pecuniary condition of the sureties offered, and, if necessary, examine the sureties themselves. It is said that if, after inquiry by a magistrate *upon the oath of the sureties*, he finds he has been deceived, he may require fresh and better sureties, and may commit the party on his refusal; for that insufficient sureties are no sureties." [emphasis mine.]

The Supreme Judicial Court of Massachusetts under similar legislation in Commonwealth v. Hughes, 1862, 5 Allen 499, at 501, stated:

"The power to inquire of or concerning any particular subject or matter, given to a judicial officer, necessarily imports an authority to administer and to examine any person or persons under the oath proper and suitable for that purpose."

To the same effect, see, Commonwealth v. Butland, 1876, 119 Mass. 317; State v. Wilson, 1889, 87 Tenn. 693, 11 S.W. 792; People v. Pollock, 1918, 65 Colo. 275, 176 P. 329.

We are not unmindful of 15 M. R.S.A. § 851 (first enacted by P.L., 1903, c. 125), which in pertinent part presently reads as follows:

"Any person who offers to act as surety for the appearance before the Superior Court of any defendant in a criminal prosecution, * * * may be required to file with said judge or bail commissioner a written statement signed and sworn to by said surety, describing all real estate owned by him within the State with sufficient accuracy to identify it, and giving in detail all incumbrances thereon and the value thereof, such valuation to be based on the judgment of said surety. * * *"

This statute is permissive only and does not deprive the bail commissioner of the power which he had independently of that statute to require and take statements under oath relating to the sufficiency of the bail. Commonwealth v. Butland, supra. It is the making of a false, wilful and corrupt oath respecting a material matter in relation to which an oath is authorized by law that embodies the essence of the crime of perjury and not the form it takes, whether oral or written. Commonwealth v. Carel, 1870, 105 Mass. 582; Commonwealth v. Hatfield, 1871, 107 Mass. 227, 231. This Court recognized the dual aspect of perjury in giving false oral testimony or in swearing falsely to the truth of a writing in State v. Ela, 1898, 91 Me. 309, 39 A. 1001.

Courts have held that statements respecting particular property are material to the issue of the surety's sufficiency and that a wilful and corrupt false statement by the surety regarding particular property in justification proceedings before an officer authorized to take bail is perjury. People v. Almashy, 1924, 229 Mich. 227, 201 N.W. 231; State v. Conforto, 1952, 222 La. 427, 62 So.2d 630; 70 C.J.S. Perjury § 15 (c).

Thus, in the instant cases, the alleged wilful and corrupt false oath underlying the perjury indictments related to a materi-

al matter as to which an oath authorized by law was administered by a person legally authorized to administer oaths. The proof thereof would support a conviction for perjury under 17 M.R.S.A. § 3001, unless, as contended by the defendants, the timing and contents of the oath were improper and insufficient in law. The agreed statement of facts admits that any statements made by the defendants regarding the ownership of property were made prior to the administration of the oath administered in the following form: "Do you swear to the truth of the statements that you have made?"

█ It makes no difference that the statements were made before or after the oath was administered. The offense consists in the making of a false statement of material facts under oath, knowing them to be false, whether the oath was administered before or after the making of the false statement, provided the party wilfully and corruptly intends the oath to verify the false statement already made or to support the factual disclosure to be given in the course of the examination. Commonwealth v. Hatfield, 1871, 107 Mass. 227, 231; State v. Gay, 1894, 59 Minn. 6, 60 N. W. 676; State v. Day, 1909, 108 Minn. 121, 121 N.W. 611.

█ Presuming as we must that the bail commissioner complied with the statutory requirements of having the surety hold up his hand in the administration of the oath, 16 M.R.S.A. § 151, and that he received from the surety such acknowledgement as to indicate to him that the surety consciously asserted the truth of the facts which he had previously related, and by reason thereof accepted the surety as bail and released the principal from confinement, it matters not that the oath given in the instant cases did not embody the usual ceremonial language of a general oath to tell the truth, the whole truth and nothing but the truth or of a special oath to make true answers, etc., (suppletory oath). The statutes nowhere prescribe the form of the oath to be administered to sureties when justifying in bail proceedings. In this case the oath administered by the bail commissioner called for oral verification of the facts already stated upon which the defendants sought to justify as bail and was proper for that purpose. An oath, in its broadest sense, includes all forms of attestation by which a party signifies that he is bound in conscience to perform an act faithfully and truthfully. 2 Bouvier's Law Dictionary, 320. To make a valid oath, for the falsity of which perjury will lie, there must be in some form, in the presence of an officer authorized to administer it in relation to material matter regarding which an oath is authorized by law, an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath. Weadock v. State, 1930, 118 Tex.Cr.App. 537, 36 S.W.2d 757; State v. Ruskin, 1927, 117 Ohio St. 426, 159 N.E. 568, 570, 56 A.L.R. 403. See, annotation in 85 Am.Dec., under Oath, at page 489; 41 Am.Jur. Perjury, § 15; 70 C.J.S. Perjury § 24 (c) (1).

At the time of making their respective statements regarding their ownership of property, the defendants had not then and there committed perjury, because they were not under oath while making the statements. When however they later affirmed those statements in taking the oath administered to them by the bail commissioner in the form aforestated, this had the unmistakable effect of bringing the statements already made under the oath and subjected the defendants to prosecution for perjury if the material part of their statements should be found to be wilfully and corruptly false. Thus, in bail-taking proceedings, a false oral verification may be the basis of a perjury action, in the same way that false swearing to a written affidavit may be.

The entry will be

Remanded to the Superior Court for trial.

WILLIAMSON, C. J., did not sit.